OPINION
Defendant-appellant, Ryan Hooks, appeals his convictions in the Warren County Common Pleas Court for possession of drug paraphernalia, possession of a controlled substance and having weapons while under disability. For the reasons that follow, we affirm.
In November 1998, a confidential informant reported to police that drug sales were occurring in an apartment at 604 Parkside Lane in Mason, Ohio. The Warren County Drug Task Force made a controlled purchase of crack cocaine from an unidentified individual in the apartment. Shortly after the completion of the controlled purchase, officers observed appellant leave the apartment. The officers left the scene and obtained a warrant to search the apartment. The officers did not continue to keep the apartment under surveillance.
Approximately six hours after the controlled purchase, the Warren County Tactical Response Team executed the search warrant. Upon entering the apartment, officers found appellant in mid-stride in the hallway of the apartment, adjacent to the kitchen and living room, facing away from the front door. The officers found appellant's wife, Maronda Hooks, in one of the two bedrooms. The officers found no one else in the apartment.
After securing appellant and Maronda, the officers searched their apartment. The officers found two marijuana pipes and rolling papers in the living room. In the bedroom, officers uncovered more rolling papers, a loaded .32 caliber revolver, and a .44 caliber revolver. The officers found two digital scales and a postal scale, which they suspected were used in connection with drug sales. The police discovered a plastic baggie containing approximately 5.16 grams of crack cocaine submerged in a deep fryer in the kitchen. In the pockets of appellant's pants, the officers discovered $1,479 in cash. And they found a notepad upon which the following list was written:
Scales [$]190 Western Union $569 Maronda'a Mom $100 Weed $50
Appellant was indicted on one count of possession of drug paraphernalia and one count of possession of cocaine. He pled not guilty to both charges and was tried before a jury. At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29. The trial court denied appellant's motion.
Appellant and Maronda testified in their defense. They maintained that appellant's bother, Brandon Hooks and his girlfriend, Linda Robertson, were living at the apartment. Shortly after renting the apartment, although neither was employed, Maronda and appellant took a trip to Walt Disney World in Florida followed by an expensive, all-inclusive trip to Jamaica. When they returned, Maronda learned that Linda had been evicted from her apartment. Maronda stated that Linda and Brandon moved into their apartment while she and appellant rented a room at the Kings Island Inn.
Maronda testified that she and appellant were still living at Kings Island Inn on the day that the police made the controlled purchase of crack cocaine at their apartment. Maronda stated that she arrived at the apartment that day shortly before noon to pick up some clothing for her and appellant, and she left forty-five minutes later. According to Maronda, she and appellant were at Kings Island Inn the entire afternoon. Around 5:00 p.m. Maronda met a friend at a local bar for "happy hour" and appellant went to Middletown to sell a set of tire rims. Maronda became intoxicated and decided for some reason to go to the apartment instead of Kings Island Inn. No one else was in the apartment when she arrived. While there, she "took the dogs out" and gave them fresh water. Maronda feel asleep on the couch in the living room and was awakened by appellant. Maronda and appellant proceeded to "get intimate" and about five minutes later the police entered the apartment. Maronda testified that police ordered her to the ground in the hallway and that she lay there naked until someone covered her with a sheet. Maronda admitted that she and appellant owned the guns, pipes and rolling papers. She maintained that she never saw the scales the police found in plain view and that the deep fryer belonged to Linda.
Appellant's testimony mirrored Maronda's testimony. Appellant maintained that he never spent a night at the apartment and insisted that he and Maronda were living at the Kings Island Inn. He denied that he ever signed a lease agreement for the apartment, asserting that Maronda had forged his signature. Appellant stated that people often mistake him for his brother and the police officers probably saw his brother leave the apartment after the controlled purchase instead of him.
Appellant remembered arriving at the apartment around 9:30 p.m. on the night the police searched the apartment. He and Maronda were "just getting into it" on the couch in the living room when the police arrived. Appellant admitted that the rolling papers, pipes and guns belonged to him and Maronda. He stated that the cash the police found in the pockets of his pants was from the sale of his rims in Middletown. Appellant denied knowing anything about the scales or the crack cocaine.
The jury found appellant guilty of possession of drug paraphernalia and possession of cocaine. Appellant moved the trial court for a new trial pursuant to Crim.R. 33 on the basis that he discovered new evidence. The newly discovered evidence consisted of an affidavit from Maronda in which she alleged that Brandon told her that the crack cocaine belonged to him. The trial court denied appellant's motion and sentenced him to a serve one year in prison.
In connection with this case, appellant also pled guilty to charges of failure to appear after his release and having weapons while under disability. Prior to pleading guilty to the charge of having weapons while under disability, appellant moved the trial court to suppress the evidence that formed the basis of the charge. The trial court denied appellant's motion.
The trial court sentenced appellant to one year in prison for failing to appear and six months in prison for having weapons while under disability. The trial court ordered appellant to serve these sentences consecutively to each other and to the one-year term for possession of cocaine and drug paraphernalia.
Appellant appeals from his convictions, presenting four issues for review, which we will construe as assignments of error.[1]
Assignment of Error No. 1:
 The Trial Court erred in that Appellant did not constructively possess cocaine as a matter of law.
Appellant's first construed assignment of error maintains that the trial court erred because appellant "did not constructively possess cocaine as a matter of law." Although appellant asserts that the trial court erred, he fails to indicate exactly how or why the trial court erred. See Loc.R. 11(B)(3) ("each assignment of error shall assert precisely the matter in which the trial court is alleged to have erred * * * "). It loosely appears that appellant is arguing that the trial court erred by denying his motion for judgment of acquittal because the state failed to introduce legally sufficient evidence to support his conviction.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
The jury convicted appellant of possession of cocaine in violation of R.C. 2925.11(A), which states, "No person shall knowingly obtain, possess, or use a controlled substance." Cocaine and derivatives therefrom are listed on Ohio's schedules of controlled substances. See R.C. 3719.41. At trial, a forensic scientist testified that the object found in the deep fryer in appellant's kitchen was crack cocaine and, therefore, a controlled substance. Thus, the only remaining issue is whether appellant knowingly possessed the cocaine.
Surrounding facts and circumstances often must establish the intent of an individual with respect to the commission of a crime, because of its difficulty of proof. See, e.g., State v. Seiber
(1990), 56 Ohio St.3d 4, 13-14; Jenks, 61 Ohio St.3d at 274-75. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or be of a certain nature, and a person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C.2901.22(B).
R.C. 2925.01(K) defines possession as "having control over a thing or a substance," but does not include "mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control of the object for sufficient time to have ended the possession. R.C. 2901.21(C). Knowing possession of an object can be actual or constructive.State v. Haynes (1971), 25 Ohio St.2d 264, 269-70; State v. Scalf
(1998), 126 Ohio App.3d 614, 619. Actual possession exists where circumstances indicate that one has or had an item within his dominion or control. State v. Briggs (Mar. 8, 1999), Butler App. No. CA98-06-127, unreported; State v. DeRossett (June 8, 1998), Clermont App. No. CA97-10-082, unreported. A person has constructive possession of an object when he is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus; Scalf, 126 Ohio App.3d at 619.
Circumstantial evidence is sufficient to establish dominion and control over an object. See, e.g., State v. Pruitt (1984),18 Ohio App.3d 50, 58; see, also, State v. Jenks (1991), 61 Ohio St.3d 259,272 (holding that circumstantial evidence is equally probative as direct evidence in proving an element of a crime). Thus, dominion and control over contraband exists where police find contraband in a defendant's living area, even where the defendant occupies the premises with others. Scalf,126 Ohio App.3d at 619. Dominion and control exists where contraband is found in plain view throughout a house or apartment. Id.; Statev. Boyd (1989), 63 Ohio App.3d 790, 796.
In the specific context of controlled substances, although mere presence in the vicinity of drugs does not prove dominion and control, readily accessible drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. See, e.g., Scalf126 Ohio App.3d at 620. Constructive possession existed where police recovered five rocks of crack cocaine hidden in a kitchen cabinet in a home that the defendant shared with relatives. Id.
Similarly, constructive possession was present where police discovered cocaine hidden in an attic trap door in a ceiling in a home defendant shared with his parents. State v. Kobi (1997),122 Ohio App.3d 160, 174-75. Thus, where drugs are found in a defendant's domicile, even when they are hidden, it may be inferred that the defendant was able to exercise dominion and control over the drugs when they are readily accessible to the defendant. See id.; Scalf, 126 Ohio App.3d at 620; State v. Crane
(July 7, 1997) Butler App. No. CA96-12-257, unreported.
The evidence presented in this case included a lease agreement for the apartment purportedly signed by appellant. Prior to the search, police officers observed appellant leave the apartment shortly after the completion of a controlled purchase of crack cocaine. When the police entered the apartment later that night, they found appellant mid-stride in the hallway, in reasonably close proximity to the kitchen. After searching the apartment, officers found rolling papers, marijuana pipes, and three scales in plain view in the apartment. The contraband was found in the living room, kitchen and a bedroom. The crack cocaine was in a deep fryer located on the kitchen counter. Appellant and his wife were the only individuals in the apartment when the police conducted the search. Considering this evidence in the light most favorable to the prosecution, we hold that a reasonable trier of fact could find beyond a reasonable doubt that appellant constructively possessed the cocaine and the drug paraphernalia.[2]
We disregard any other arguments appellant may have intended to raise in his construed assignment of error because of his failure to comply with App.R. 16(A). App.R. 12(A)(2); see, also, State v.Watson (1998), 126 Ohio App.3d 316, 321. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 The Trial Court erred in that the conviction of Appellant was against the manifest weight of the evidence regarding the issue of Possession of Cocaine.
In his second construed assignment of error, appellant argues that his conviction for possession of cocaine was against the manifest weight of the evidence.
An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997) 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In support of his contention that his conviction is against the weight of the evidence, appellant maintains that there was no evidence that he possessed cocaine. Appellant also asserts that it was not contradicted at trial that he was living at Kings Island Inn rather than the apartment.
As noted in regard to appellant's first assignment of error, there is ample evidence from which the jury could conclude that appellant constructively possessed cocaine. Although appellant and his wife testified that they did not live at the apartment, it was the role of the jury to determine what weight to give their testimony. No other witnesses testified that appellant or his wife did not have dominion and control over the apartment. On the contrary, officers observed appellant leaving the apartment shortly after the controlled purchase of crack cocaine. In addition, Maronda apparently kept their dogs at the apartment and returned there to let them out and give them water. Maronda testified that she went to the apartment on the day of the controlled drug purchase to pick up clothing for her and appellant, which they apparently kept there. Maronda stated that she often returned to the apartment to use the laundry facilities. Appellant and Maronda both admitted to ownership of the rolling papers, guns and pipes, all of which were kept at the apartment.
On the evening the officers searched the apartment, Maronda inexplicably returned to the apartment, instead of the Kings Island Inn. No one else was in the apartment when she arrived and she was still able to gain access to the apartment. Appellant returned to the apartment as well and, instead of going to the Kings Island Inn where they claimed to be residing, appellant and his wife testified that they started "getting intimate" on the living room couch. They did so apparently without any concern as to whether the alleged occupants of the apartment would return home. Therefore, despite any testimony of appellant or Maronda to the contrary, the jury could reasonably weigh all of the evidence and reasonably conclude that appellant exercised dominion and control over the apartment and the objects contained within it.
Based on the foregoing and a thorough review of the record, we find that the trier of fact neither lost its way nor created a manifest miscarriage of justice by finding appellant guilty of possession of cocaine. Appellant's conviction is not against the manifest weight of the evidence. The second assignment of error is overruled.
Assignment of Error No. 3:
 The Trial Court erred when it failed to grant a new trial to appellant Ryan Hooks when a third party admitted that the cocaine belonged to that third party.
In his third construed assignment of error, appellant maintains that the trial court erred by denying his motion for a new trial. Appellant argues that he acquired newly discovered exculpatory evidence after trial that he could not have discovered beforehand and, as such, the trial court should have granted him a new trial. According to appellant, the newly discovered evidence consisted of an affidavit from his brother, Brandon Hooks, admitting that the cocaine found in the apartment belonged to him.
Crim.R. 33 provides the grounds for which the trial court may grant a new trial. In order to prevail on a motion for a new trial based upon newly-discovered evidence pursuant to Crim.R. 33(A)(6), the defendant must establish that the evidence: (1) is of such weight that it creates a strong probability that a different result would be reached at the second trial; (2) has been discovered since trial; (3) could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence.State v. Hawkins (1993), 66 Ohio St.3d 339, 350, quoting State v.Petro (1947), 148 Ohio St. 505.
The decision to grant or deny a motion for new trial is within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. State v. Scheibel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466,470; State v. Moreland (1990), 50 Ohio St.3d 58, 61.
Our review of the record fails to disclose any affidavit by Brandon Hooks and appellant provides no reference to the record where such an affidavit can be found.[3] Our review of the record shows that appellant moved for a new trial on the basis of an affidavit executed by Maronda stating that Brandon told her that the cocaine was his. This evidence is not the type of newly-discovered evidence that warrants the granting of a new trial. First, despite the obvious hearsay problems with this statement, it is highly doubtful that appellant was unaware of this information prior to trial. Second, appellant and Maronda testified at trial that they believed the cocaine belonged to Brandon and Linda, making the affidavit merely cumulative to former evidence. Finally, jurors considered and rejected appellant's argument that he was unaware of the cocaine and that it belonged to Brandon or Linda. Thus, the affidavit is not of such weight that it creates a strong probability that a different result would be reached at the second trial. The trial court did not abuse its discretion in denying appellant's motion. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 The Trial Court erred when it failed to suppress the evidence discovered during the eviction of Mr. Ryan Hooks on January 27, 1999.
In his fourth construed assignment of error, appellant argues that the trial court erred by denying his motion to suppress evidence pertaining to the charge of having weapons while under disability. Appellant pled guilty to the charge.
It is well-established that a plea of guilty waives any errors by the trial court in failing to suppress evidence. State v.Elliott (1993), 86 Ohio App.3d 792, 795; Huber Heights v. Duty
(1985), 27 Ohio App.3d 244. Since appellant pled guilty to the charge, he cannot argue on appeal that the trial court erred in denying his motion to suppress. Accordingly, appellant's fourth assignment of error is overruled.
YOUNG and WALSH, JJ., concur.
[1] An appellant's brief must precisely set forth the specific assignments of error for appellate review, including any specific issues for review that relate to each assignment of error. See App.R. 16(A); Loc.R. 11. Although appellant's brief fails in this respect, we will construe his four separately identified issues as assignments of error.
[2] Appellant's argument discusses evidence and facts presented after the close of the state's case. A challenge to the sufficiency of evidence supporting a conviction considers only
whether the state has met its burden of production at trial and whether the state's evidence, if believed, supports a defendant's conviction. See State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring) (emphasis added). A challenge to the weight of the evidence considers whether the state has carried its burden of persuasion with regard to all of the evidence produced at trial. Id. Facts relevant to appellant's defense will be addressed in appellant's construed assignment of error regarding the weight of the evidence.
[3] App.R. 16(D) requires references to parts of the record, including relevant facts, to be accompanied by citations to the record. See, also, Loc.R. 11(B)(2) and (3). Appellant's brief is completely devoid of any citations to the record.