OPINION
Appellant, James Bassett, appeals a judgment of conviction from the Crawford County Court of Common Pleas for possession of a controlled substance in violation of R.C. 2925.11(A), (C)(4)(e). For the reasons that follow, we affirm the judgment of the trial court.
The investigation of Appellant began in excess of one year prior to his arrest, due to information gathered by police that Appellant was involved in food stamp trafficking and the distribution of crack cocaine. This information resulted in an undercover operation in August 1999, when an undercover agent made several trips to Columbus, Ohio with Appellant in an effort to buy crack cocaine. During these trips, conversations revealed Appellant's knowledge of crack cocaine trafficking. These conversations were recorded by police through the use of a transmitter and wire carried by the undercover officer.
Thereafter, subsequent information from local sources that crack cocaine was being sold by Appellant caused surveillance to begin at Appellant's residence in Bucyrus, Ohio in August 2000. Several surveillance teams observed multiple people coming and going from Appellant's residence in a manner consistent with drug trafficking. This led police to conduct a garbage-pull from Appellant's tree lawn, which produced several pieces of evidence indicative of drug use and sale.
Subsequently, a search warrant was issued for Appellant's residence based upon multiple pieces of evidence gathered throughout the long period of investigation. This included the undercover investigations, information provided by local residents, the evidence from the trash pull, and the evidence gathered from police surveillance. After the search warrant was issued, police continued to keep Appellant's house under observation in order to prepare for the SWAT team's entrance.
On the morning of August 31, 2000, police entered Appellant's house. They were met inside the residence by Appellant, who was the only person awake in the residence. Approximately forty-one grams of crack cocaine were found in plain view, and Appellant was indicted for possession of a controlled substance and drug trafficking pursuant to R.C. 2925.11(A), (C)(4)(e) and 2925.03, respectively.
During Appellant's jury trial, testimony from one of Appellant's cell-mates indicated Appellant confessed to him that the drugs seized by police were indeed his and that he was selling crack cocaine. Upon considering the evidence against Appellant, the jury returned a guilty verdict for the first degree felony possession charge, but were unable to reach the same conclusion in regards to the trafficking charge.
The matter came before the Court for sentencing on February 20, 2001, and the trial court imposed a ten year prison sentence upon Appellant. This sentence was based primarily upon Appellant's great likelihood of recidivism. From this decision, Appellant filed this timely appeal asserting the following six assignments of error.
 Assignment of Error I The trial court erred in overruling the motion to suppress the fruits of the search of defendant's belongings.
 Appellant contends that the basis for the warrant's issuance to search his house was invalid as only being supported by a single garbage-pull conducted approximately two weeks prior to its execution. For the following reasons, we disagree.
Upon review of the issuance of a search warrant, courts are not permitted to substitute their judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause for its issuance.[1] Instead, a reviewing court must determine whether the magistrate had a substantial basis for concluding that probable cause existed.[2] This includes according great deference to the determination of probable cause, and if the determination is marginal or doubtful it should be resolved in favor of upholding the warrant.[3]
A magistrate's basis for issuing a warrant must take into consideration the totality of the circumstances. In other words, the magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4]
We find Appellant's claim is misplaced because in this case the garbage-pull was only one factor within the totality of the circumstances presented to support the issuance of the search warrant. Based upon statements made to the police by credible witnesses who were also admitted drug users, the police had been investigating Appellant in excess of one year prior to the issuance of the search warrant. Part of this investigation included undercover infiltration, which resulted in Appellant traveling to Columbus, Ohio in a effort to supply the undercover agent with crack cocaine. While ultimately unsuccessful, Appellant did allude to his drug related activities. Additionally, another source explained that an employee at his place of business had personally witnessed a person leave Appellant's address with what appeared to be crack cocaine. Moreover, police were aware of Appellant's prior drug convictions for cocaine and heroin in New Jersey and Franklin County, Ohio.
On two days prior to the issuance of the search warrant, surveillance teams staked out the residence where Appellant was staying and noticed several people coming and going from the house in a manner consistent with drug traffic. Also at this time, the garbage was pulled from the residence and several items consistent with drug sale and use were present. These items included several baggies, which contained residue that tested positive for crack cocaine, a box for a digital scale used for weighing small quantities, and several lighters. Moreover, mail with Appellant's name and the address of the residence positively linked him to the house that was under surveillance.
In addition to these facts, on the night before the SWAT team entered Appellant's house, police witnessed more behavior consistent with drug trafficking. In this instance, a car pulled up to the residence with two passengers, and while one remained in the passenger seat, the other was let into the house and returned back to the car a short time later. Once inside the car, police witnessed the two passengers passing an object back and forth, which was observable by the light emitted from the flame of a lighter. Because the flame was lit for extended periods, police had cause to believe that the passengers were likely smoking crack cocaine.
Based upon these findings, the magistrate had a substantial basis for finding probable cause to issue the search warrant. Furthermore, Appellant's claim that the basis for the warrant became stale because it was only based upon a single garbage-pull two weeks prior to its execution is not persuasive in light of evidence produced from the continued surveillance by the police.
Accordingly, Appellant's first assignment of error is not well taken and is overruled.
 Assignment of Error II There was insufficient probative evidence to prove beyond a reasonable doubt that the defendant possessed the drugs.
 Appellant maintains that the evidence presented against him was insufficient to sustain a guilty verdict for possession of crack cocaine. In light of the evidence produced at trial, we disagree.
Upon review of the sufficiency of the evidence, an appellate court's function is to examine the evidence to determine whether the evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt.[5] The relevant analysis is whether,
 after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[6]
 Additionally, we are mindful of the general appellate maxim that a correct judgment will not be reversed by a reviewing court simply because the reasoning for the decision was incorrect.[7]
Appellant was convicted of possession of crack cocaine in an amount less than one hundred grams but in excess of twenty-five grams.[8] In pertinent part, R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The relevant definitions for this section are as follows:
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.[9]
 "Possess" * * * means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the * * * substance is found.[10]
 "Controlled substance" means a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V.[11]
 Notably, possession may be established through the defendant's constructive possession where the accused was able to exercise dominion or control over the contraband.[12]
The Supreme Court has held that drugs found in a common area of a house that is occupied by several individuals is not enough evidence, in and of itself, to tie the contraband to one individual.[13] However, this case presents extensive circumstantial and direct evidence, which would support that a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
Evidence linking Appellant to the crack cocaine found at the scene on the night of his arrest includes several things. First, when the police arrived Appellant was the only individual awake and was apparently near the front door when the police arrived. Once inside, the police identified what appeared to be rocks of crack cocaine on Appellant's computer stand in plain view, which was approximately twelve feet away. The computer was turned on at the time and identified as Appellant's because files therein contained his name and personal information. Also, what was suspected to be crack cocaine later tested positive as a schedule II controlled substance weighing approximately forty-one grams. Furthermore, there was a partially eaten bowl of cereal near the drugs that appeared to be freshly poured and a police scanner tuned to the local police frequency. Once removed from the interior of the house, when the police asked Appellant where the contraband was, Appellant stated: "All my shit is out in the open." This was corroborated by Appellant's admission to a cellmate that the drugs recovered were his.
In light of this evidence and taken in conjunction with the ongoing investigation and evidence accumulated prior to his arrest, an average person could reach a guilty verdict for possession of crack cocaine by proof beyond a reasonable doubt. Consequently, Appellant's second assignment of error is overruled.
 Assignment of Error III The trial court erred in permitting the introduction of alleged other acts of defendant, which allegations denied the defendant due process.
 Appellant claims the testimony about his actions that took place a year prior to his arrest were not admissible at trial because they should have been considered prior acts and inadmissible under Evid.R. 404(B). However, for the foregoing reasons, we disagree.
The admission or exclusion of evidence rests within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion.[14] An abuse of discretion is defined as a judgment that is unreasonable, arbitrary, or unconscionable, which is something more than an error of law or judgment.[15]
The investigation of Appellant began in excess of a year prior to this arrest, with his connection to food stamp trafficking and drug distribution. This led to an undercover police investigation, which culminated in Appellant driving an undercover agent to Columbus, Ohio on several occasions in an attempt to secure crack cocaine for the officer. Despite the fact that these acts were a year prior to Appellant's arrest, they formed the beginning of the police investigation of him. Therefore, in order for the jury to understand the entire circumstances surrounding the apprehension of Appellant, this evidence was admissible, and Evid.R. 404(B) is inapplicable.
Consequently, the trial court's decision to allow the evidence was not an abuse of discretion, and therefore, Appellant's third assignment of error is not well taken and is overruled.
 Assignment of Error IV The trial court erred in failing to declare a mistrial where the state's undercover agent volunteered information that the defendant had "served some time in New Jersey."
 The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.[16] "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *."[17] The granting of a mistrial is necessary only when a fair trial is no longer possible.[18]
Appellant claims that he should have been granted a mistrial because testimony from an undercover officer revealed that he had "served some time in New Jersey." A conversation revealing this information had taken place between Appellant and the officer on one of the trips taken to Columbus, Ohio. The testimony on direct examination surrounding this incident proceeded as follows:
 Q. And were there any conversations in the car on the way down to Columbus?
A. Several conversations.
Q. What were they about?
 A. Primarily, we were talking about myself purchasing drugs from him. * * *
* * *
 A. He advised me that he was a little skeptical of me, he didn't really know me that well, and that he had already served some time in New Jersey * * *.
Following an objection by Appellant, the trial court overruled the motion for a mistrial because the testimony was not elicited by the prosecutor. The prosecutor had merely inquired as to what certain conversations were about. Furthermore, the trial judge gave an instruction to the jury to disregard the statement pertaining to any possible prior arrests or imprisonment that may have occurred in New Jersey. The giving of a curative instruction by the trial court is often enough to ameliorate the prejudice of an improper statement, and juries are presumed to have followed the court's instructions.[19]
Consequently, in light of the large amount of evidence against Appellant in this case, the fact that the prosecutor did not intentionally elicit the questioned testimony, the fact that the testimony contained no details of the conviction, the fact that the information had been volunteered by the Appellant to the undercover agent, and the fact that the judge gave a curative jury instruction, we find that the trial court did not abuse its discretion in failing to grant a mistrial. Furthermore, we find that the testimony provided did not preclude Appellant from having a fair trial.
For these reasons, Appellant's fourth assignment of error is not well taken and is therefore overruled.
 Assignment of Error V The trial court erred in sentencing Defendant, where the sentence was based upon the court's consideration of a charge for which the defendant had not been convicted.
As a general rule, a trial court has broad discretion when sentencing a defendant.[20] Therefore, when considering whether a trial court erred in imposing a particular sentence, an appellate court must determine whether the trial court abused its discretion.[21] Upon review by an appellate court, no reversal will be granted for a trial court's exercise of discretion in sentencing where the sentence imposed is authorized by statute and is within statutory limits.[22]
Appellant claims that he was given a maximum prison sentence because the trial court relied on the drug trafficking charge that he was not convicted of, which constitutes an abuse of discretion by the trial judge. In order to impose a maximum sentence on an offender who has previously served a prison term, which is the case here, the court must make several findings. Particularly, R.C. 2929.14(C) states that "courts may impose the longest term authorized for the offense * * * only upon offenders who committed the worst forms of the offense * * * [or] who pose the greatest likelihood of committing future crimes." Although a court may impose a maximum prison sentence, it must provide its reasons for doing so at the sentencing hearing.[23] Moreover, according to the Supreme Court, a maximum sentence is not lawful unless the record "reflect[s] that the trial court imposed the * * * sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)."[24]
At the sentencing hearing, the trial court judge gave, in great length, the reasons he was imposing a maximum prison sentence. He based the sentence upon the great likelihood of recidivism Appellant possesses. The judge stated Appellant's past contained multiple convictions for "drug abuse, distribution of heroin and cocaine, conspiracy to possess, attempted possession of cocaine, and numerous * * * other minor misdemeanors." Furthermore, while under supervision for such crimes, Appellant tested positive for cocaine and opiates, and he failed to report to his probation officers. While on probation for one of these crimes Appellant absconded and was subsequently arrested in New Jersey on felony drug charges. Upon return to Ohio, Appellant was arrested again in Franklin County and served eighteen months incarceration.
While the trial court's comments about the charge for which Appellant was found not guilty are unfortunate, the record clearly and convincingly supports the maximum sentence imposed. Substantial justification was given by the trial court that there is the greatest likelihood of recidivism by Appellant, which sufficiently satisfies the mandates of R.C. 2929.14(C).
Therefore, Appellant's fifth assignment of error is not well taken and is hereby overruled.
 Assignment of Error VI The trial court erred in imposing a period of post release control, where this defendant was not notified of the same at the sentencing hearing.
Appellant contends that the imposition of post release control should be invalidated because the trial court did not verbally advise him of this at his sentencing hearing. We find this assignment of error without merit for the following reasons.
In relevant part, R.C. 2929.19(B)(3) states the following:
 * * * if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do the following:
* * *
 (c) * * * if the offender is being sentenced for a felony of the first degree, [the court shall] notify the offender that a period of post-release control pursuant to section 2967.28 of the Revised Code may be imposed following the offender's release from prison.
The Supreme Court recently held that even though a trial court did not verbally address post release control during sentencing, the offender did sign a plea form containing the terms of post release control, and such terms were also contained within the sentencing entry, which consequently gave meaningful notice to the defendant.[25] That decision is analogous to the case herein where Appellant was not verbally notified of his post release control conditions, but was sufficiently given notice in the written Judgment Entry served upon him a few days after sentencing.
Accordingly, we find Appellant's final assignment of error to be without merit and it is, therefore, overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
SHAW and BRYANT, JJ., concur.
[1] State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus
[2] Id.
[3] Id.
[4] Id. at 329, quoting Illinois v. Gates (1983), 462 U.S. 213,238-39
[5] State v. Adkins (2000), 136 Ohio App.3d 765, 775-76, quoting Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus
[6] Id.
[7] Id. at 776
[8] R.C. 2925.11(C)(4)(e)
[9] R.C. 2901.22(B) (emphasis added)
[10] R.C. 2925.01(K)
[11] R.C. 3719.01(C)
[12] State v. Wolery (1976), 46 Ohio St.2d 316, 329; State v. Scalf
(1998), 126 Ohio App.3d 614, 619-20
[13] State v. Haynes (1971), 25 Ohio St.2d 264, 270
[14] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus
[15] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219
[16] State v. Sage, 31 Ohio St.3d at 182
[17] State v. Reynolds (1988), 49 Ohio App.3d 27, 33
[18] State v. Franklin (1991), 62 Ohio St.3d 118, 127
[19] State v. Jones (2001), 91 Ohio St.3d 335, 344, citing State v.Raglin (1998), 83 Ohio St.3d 253, 264
[20] State v. Mohr (1999), Van Wert County No. 15-98-05, unreported
[21] Id.
[22] Id.
[23] R.C. 2929.19(B)(2)(d)
[24] State v. Edmonson (1999), 86 Ohio St.3d 324, 329
[25] Woods v. Telb (2000), 89 Ohio St.3d 504, 513