This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Joseph Palmison ("Palmison"), appeals from the decision of the Summit County Court of Common Pleas convicting him of illegal manufacture of drugs and aggravated possession of drugs. We affirm.
 I.
On June 14, 2001, Palmison was indicted on one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A), and one count of aggravated possession of drugs, in violation of R.C. 2925.11(A). He entered a plea of not guilty on both counts, and the matter proceeded to jury trial on October 11-12, 2001. The jury found Palmison guilty on both counts. The trial court sentenced him to a mandatory term of four years imprisonment for the charge of illegal manufacture of drugs, with a mandatory fine of $7,500. The trial court sentenced Palmison to six months imprisonment on aggravated possession of drugs and ordered the two sentences to run concurrently. This appeal followed.
 II. First Assignment of Error "THE TRIAL COURT'S VERDICT OF GUILTY ON ALL COUNTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FURTHER, THE CONVICTIONS OF THE DEFENDANT FOR THE CHARGES OF AGGRAVATED POSSESSION OF DRUGS AND ILLEGAL MANUFACTURE OF DRUGS WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE AND SHOULD BE REVERSED."
In his first assignment of error, Palmison asserts that his convictions were against the manifest weight of the evidence. He further argues that the convictions were based on insufficient evidence. As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
After a review of the record, we find that Palmison waived any objection under Crim.R. 29 to the sufficiency of the evidence. In order to preserve the denial of a Crim.R. 29(A) motion for appellate review, a defendant who is tried before a jury and brings such a motion at the close of the state's case must renew the motion for acquittal at the close of all evidence, provided that the defendant puts on a defense.State v. Miley (1996), 114 Ohio App.3d 738, 742. In this case, Palmison made a Crim.R. 29 motion at the close of the state's evidence, which the trial court denied. However, Palmison failed to renew his motion for acquittal. Accordingly, we decline to address the portion of Palmison's argument relating to the insufficiency of the evidence.
We now turn to Palmison's argument that his convictions were against the manifest weight of the evidence. A review of the weight of the evidence determines whether the state has met its burden of persuasion.State v. Angle (June 2, 1999), 9th Dist. No. 2875-M, at 7. When a defendant asserts that the conviction is against the manifest weight of the evidence,
 "[a]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial."
Id.
Palmison was convicted of illegal manufacture of drugs and aggravated possession of drugs. R.C. 2925.04(A) provides that "[n]o person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." A person acts knowingly when, regardless of his purpose, "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "`Manufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J).
A person is guilty of aggravated possession of drugs when he knowingly obtains, possesses, or uses a Schedule I or II controlled substance. R.C. 2925.11(A); R.C. 2925.11(C)(1). Methamphetamine is a Schedule I controlled substance. Possession is defined as:
 "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. R.C. 2925.01(K). Possession may be actual or constructive. State v. Scalf (1998), 126 Ohio App.3d 614, 619. Constructive possession occurs when a defendant exercises dominion and control over an object, "even though that object may not be within his immediate physical possession." State v. Wolery (1976), 46 Ohio St.2d 316, 329. Moreover, drugs discovered in close proximity to the accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. See State v. Kobi, 122 Ohio App.3d 160, 174; Scalf, 126 Ohio App.3d at 620. "
Richard Watson and Detectives Michael Zimcosky, David Smith, Mark Kreiger, Thomas Gottas, and Glenn Payne testified for the prosecution. Watson's testimony revealed the following. Watson is currently serving a two-year term of imprisonment on possession and aggravated trafficking charges. After his arrest on these charges, he agreed to cooperate with law enforcement. He testified that there was no reduction in the charges against him, but law enforcement agreed to give him "case consideration," meaning that they would inform the judge at Watson's sentencing that he was cooperating with their investigations. Watson admitted that he received the minimum sentences of two years, while the maximum sentence he faced was 18 years.
In June 2001, Roxanne Oswald contacted Watson about setting up a methamphetamine lab. Oswald told him she knew of a safe house where the lab could be set up in the city of Stow, Ohio. Watson asked her the names of others who would be involved with the lab, and she told him "Joe" and "Vithiya." On June 4, 2001, a portable methamphetamine lab was delivered to Watson at his house. The lab was later picked up by two individuals, and although Watson did not see the two men, he stated that Oswald told him that it was "Joe" and "Vithiya."
The next day, Watson and Oswald packed up some items, including a hot plate, and left for the Stow safe house. Along the way, they stopped at a convenience store to purchase ice, coffee filters, paper towels, and cat litter. Subsequent testimony by the law enforcement officers revealed that each of these items is used at some point during the manufacturing process of methamphetamine. Watson and Oswald arrived at the Stow safe house, located on Smokerise Drive, where they unloaded the vehicle. Watson identified the defendant, Palmison, as Joe, an individual who helped unload the bags from the vehicle. Watson left the house before the lab was set up and before the manufacturing process began. Oswald remained at the house. Watson stated he did not know who was actually present during the manufacturing of the methamphetamine.
As part of his agreement to cooperate with the Summit County Drug Unit, Watson relayed this information to Detective Gottas. Based upon the information by Watson, surveillance was set up at the Smokerise Drive residence, which is owned by the father of Vithiya Chan. At approximately 8:30 p.m., Chan's Mercedes SUV left the property. Officers proceeded to stop the vehicle. Oswald was a passenger in the Mercedes, which was driven by Palmison. A search of the vehicle revealed several items that relate to the manufacturing of methamphetamine, as well as some items containing residue of the drug and a container of methamphetamine oil.
Palmison was then arrested by Detective Zimcosky. Zimcosky testified that Palmison told him that what the officers were looking for was in the basement of the house on Smokerise Drive. Palmison told him "the meth lab is in the basement." He stated that the lab was set up but not in operation at that time. Officers obtained a search warrant for the property on Smokerise Drive, and the house was searched. A methamphetamine lab was discovered in the basement. Detective Gottas testified that, during the search, Chan told him that the lab belonged to Oswald and Palmison, they had set it up earlier that day, and they were planning on selling the methamphetamine they produced. Neither Chan nor Oswald testified.
Palmison testified on his own behalf. He stated that Chan picked him up and drove him to the Smokerise Drive house so he could hang out with his friends. He met Oswald a few weeks earlier, and had known Chan since high school. Palmison was at the house when Watson dropped off Oswald, and Palmison states that he did not help in unloading the vehicle. Palmison testified that during the five hours he spent at the house, Chan and Oswald took turns going into the basement for periods of time. Palmison stated that he did not realize what they were doing or that there was a lab in the basement until just prior to the time he and Oswald left. On cross-examination, Palmison admitted that, at one point in the evening, he asked them what they were doing and they told him they were making a lab. Palmison stated that he thought Chan was in school and the lab was a homework assignment. He testified that Chan and Oswald told him they were conducting an experiment. He stated he had no idea that the experiment was actually manufacturing methamphetamine.
Although some of the testimony was in conflict, we decline to overturn the verdict because the jury believed the prosecution witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Matters of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in convicting Palmison of illegal manufacture of drugs and aggravated possession of drugs.
This is not a case where the evidence weighs heavily in favor of the defendant, meriting a reversal of the conviction and a new trial. Therefore, we conclude that Palmison's convictions for aggravated possession of drugs and illegal manufacture of drugs were not against the manifest weight of the evidence. Palmison's first assignment of error is overruled.
 Second Assignment of Error "THE TRIAL COURT ERRED IN ORDERING DEFENDANT TO PAY A MANDATORY FINE OF $7,500.00."
In his second assignment of error, Palmison challenges the trial court's imposition of a mandatory fine for his conviction of illegal manufacture of drugs. Palmison asserts that it was error for the trial court to order the mandatory fine because the trial court found him to be indigent for the purposes of appointing appellate counsel. We disagree.
The trial court imposed a mandatory fine of $7,500 for Palmison's conviction of illegal manufacture of drugs, which is a second-degree felony. Pursuant to R.C. 2929.18(A)(3)(b) and (B)(1), a conviction for a felony in the second degree under R.C. 2925 carries a mandatory fine of $7,500 and a maximum fine of $15,000. However, R.C. 2929.18(B)(1) also states that
 "[i]f an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender. R.C. 2929.18(B)(1). The Ohio Supreme Court has stated that R.C. 2929.18(B)(1) clearly requires the imposition of a mandatory fine by a sentencing court unless (1) the offender files an appropriate affidavit with the required information, and (2) the court determines that the offender is in fact indigent and is unable to pay the mandatory fine. State v. Gipson (1998), 80 Ohio St.3d 626, 631."
In this case, the record reveals that Palmison failed to file an affidavit alleging that he was indigent and unable to pay the fine,[1]
and the trial court made no determination that he was indigent and unable to pay the fine. A trial court's determination that a defendant is indigent for the purpose of appointing appellate counsel is distinct from a determination of a defendant's indigency regarding his ability to pay a mandatory fine. State v. Bybee (Aug. 30, 2000), 9th Dist. No. 19758, at 11, quoting State v. Powell (1992), 78 Ohio App.3d 784, 789-90. Accordingly, the trial court did not err when it imposed a mandatory fine. Palmison's second assignment of error is overruled.
 Third Assignment of Error "THE REPRESENTATION OF THE DEFENDANT BY TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF DEFENDANT'S RIGHTS AS GUARANTEED TO HIM BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION."
In his third assignment of error, Palmison argues that he was denied effective assistance of trial counsel. We disagree.
The Sixth Amendment guarantees the right to effective assistance of counsel to each defendant. Courts use a two step process in determining whether a defendant's right to effective assistance of counsel has been violated.
 "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. In order to demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691."
The court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." Id. at 690. First, the defendant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Then, the court must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id. There is a strong presumption that counsel's performance was adequate. State v. Smith (1985), 17 Ohio St.3d 98, 100. An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. State v. Loza (1994), 71 Ohio St.3d 61, 83.
Palmison asserts that trial counsel erred in five areas: (1) failing to object to hearsay testimony introduced by the police officers; (2) failing to follow through with Palmison's indigency status; (3) failing to object to prejudicial and compound testimony concerning the manufacturing of methamphetamine; (4) failing to fully inquire into a witness' testimony; and (5) failing to object to hearsay testimony of a co-defendant not present at trial.[2]
Although Palmison asserts these errors by trial counsel, he fails to cite to any facts in the record to support his argument. Furthermore, Palmison does not argue how the specified instances fell below the range of that which is considered professionally competent, nor does he argue how the alleged errors resulted in prejudice. Palmison has the burden of affirmatively demonstrating error on appeal. See Angle v. W. Res. Mut.Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 4. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. State v. Vandal (Jan. 26, 2000), 9th Dist. No. 2983-M, at 3.; Kremer v. Cox (1996),114 Ohio App.3d 41, 60. See, also, State v. Hicks (Nov. 20, 1995), 5th Dist. No. 95CA13. As Palmison failed to demonstrate that his counsel was ineffective and that the alleged errors resulted in prejudice, his summary assertions cannot be considered as sufficient to carry his burden of proving that he was denied the effective assistance of counsel pursuant to Strickland. Palmison's third assignment of error is overruled.
 Fourth Assignment of Error "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN ITS DENIAL OF DEFENDANT'S REQUESTED JURY INSTRUCTION REGARDING INFERENCES ON INFERENCES."
In his final assignment of error, Palmison challenges the trial court's denial of his requested jury instruction on inferences on inferences. We find that Palmison waived his objection to these jury instructions. Crim.R. 30 states in pertinent part:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
As a general matter, a request for a special jury instruction must be made in writing, and a party objecting to the trial court's failure to give such an instruction must object before the jury retires. State v.Franklin (1991), 62 Ohio St.3d 118, 128. Generally, failure to object constitutes waiver, absent plain error. Id. See, also, Crim.R. 52(B). However, the Ohio Supreme Court has created an exception, such that a party does not waive his or her objections to the trial court's refusal to include the proposed instruction, when the record affirmatively shows that the trial court has been fully apprised of the correct law governing a material issue in dispute. State v. Wolons (1989), 44 Ohio St.3d 64, paragraph one of the syllabus. See, also, State v. Brooks (July 13, 1994), 9th Dist. No. 16192, at 4.
While it appears from the transcript of proceedings that Palmison did submit a proposed jury instruction regarding inferences on inferences, the record does not contain his proposed instructions. An appellate court's review is restricted to the record provided by the appellant to the court. App.R. 9; App.R. 12(A)(1)(b). Accordingly, the appellant assumes the duty to ensure that the record, or the portions necessary for review on appeal, is filed with the appellate court. App.R. 10(A); RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19; Loc.R. 5(A). Without the proposed jury instruction, we cannot say that the trial court erred in refusing Palmison's request for a jury instruction on inferences on inferences. Palmison's fourth assignment of error is overruled.
 III.
Having overruled Palmison's four assignments of error, we affirm the decision of the Summit County Court of Common Pleas.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
WHITMORE, J., BATCHELDER, J. CONCUR.
[1] In his reply brief, Palmison asserts that an affidavit of indigency was before the trial court. We note that the affidavit Palmison refers to in his reply brief was attached to his trial counsel's motion for appointed counsel fees. This motion and the attached affidavit are not, however, a part of the record on appeal.
[2] Palmison sets forth additional instances of alleged ineffective assistance of counsel in his reply brief, citing the failure of counsel to renew his Crim.R. 29 motion and counsel's failure to file an affidavit concerning the imposition of the mandatory fine. Pursuant to Loc.R. 7(C), reply briefs are restricted to matters in rebuttal of the appellee's brief. "Proper rebuttal is confined to new matters in the appellee's brief." Loc.R. 7(C). An appellant may not use a reply brief to raise new assignments of error or new issues for consideration; rather, the reply brief is "merely an opportunity to reply to the brief of the appellee." In re Songer (Oct. 3, 2001), 9th Dist. No. 01CA007841, at 14, quoting Sheppard v. Mack (1980), 68 Ohio App.2d 95, 97, fn. 1. We therefore decline to address these issues because they are not properly before this court.