**The STATE of Ohio, Appellee,**

**v.**

**SCALF, Appellant.**

[Cite as *State v. Scalf* (1998), 126 Ohio App.3d 614.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71910.

Decided March 16, 1998.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Martina Kulick,* Assistant Prosecuting Attorney, for appellee.

*Robert M. Ingersoll,* Cuyahoga County Assistant Public Defender, for appellant.

---

DYKE, Presiding Judge.

Defendant Eugene Scalf appeals from his conviction for possession of less than five grams of cocaine. For the reasons set forth below, we affirm defendant's conviction but reverse the sentence imposed and remand the matter for resentencing.

On September 24, 1996, defendant was indicted on one count of possession of more than one but less than three grams of crack cocaine, and one count of

possession of criminal tools, to wit, a scale, money, a tray, and plastic bags. The charges were issued in connection with the execution of a search warrant on July 5, 1996. Defendant pleaded not guilty, and the matter proceeded to a jury trial on November 20, 1996.

The state and the defense stipulated to the authenticity of the forensic laboratory report of the Cleveland Police Scientific Examination Unit, and stipulated that the controlled substances identified in this report were correctly identified. In relevant part, this report indicated that rock-like materials found within a piece of black plastic tested positive for cocaine.

The state's evidence further demonstrated that Cleveland Police had received complaints that juveniles were involved in drug activity at 1498 West 116th Street, in Cleveland. Thereafter, on July 2, 1996, Cleveland Police Detective Joseph Salvatore and a confidential informant went to this location and observed defendant sitting on the front steps. Salvatore remained in his vehicle and the informant approached defendant and said, "Can I yell at you?" Defendant asked the informant if he needed a "rock," and the informant responded that he did. Defendant then stated that the informant would have to wait until his son returned home. Salvatore and the informant returned approximately one-half hour later, and defendant indicated that his son had not returned.

On July 3, 1996, Salvatore and the informant returned to the area. Salvatore parked approximately ten houses away from defendant's residence. The informant, who possessed marked "buy money," approached defendant while Salvatore, using binoculars, observed defendant. Defendant was again sitting on the front steps with one of his juvenile sons. The informant produced his money. Defendant's son took the money and gave the informant a substance which was later determined to contain cocaine.

Salvatore obtained a warrant to search the residence. The warrant was executed on July 5, 1996 by vice and strike force detectives. As is relevant herein, the search revealed the following items: a piece of black plastic with five rocks of suspected cocaine was found in a metal cabinet in the kitchen; 'a scale, a bag with residue of suspected cocaine, a spoon and a tray with residue of suspected cocaine were found in an upstairs sitting room; and defendant's personal papers were found in the same upstairs sitting room.

Defendant testified on his own behalf and denied that he had been approached by anyone regarding the purchase of drugs at any time, and further stated that he is completely opposed to drug use and would not tolerate it from his children. He indicated that his ex-wife was originally awarded custody of the couple's two juvenile sons but was unable to handle them. The boys now live with him, but continue to get into trouble and have severe behavior disorders. Defendant further stated that his nephew, brother, and sister also reside at the West 116th

Street home. The home is owned by defendant's brother and sister. Defendant maintained that he lives in a small area in the basement and has no control over the activities at the home, but he acknowledged that he cooks meals for the family.

The matter was submitted to the jury, and defendant was found guilty of possession of crack cocaine but not guilty of possession of criminal tools. The trial court sentenced defendant to eighteen months' incarceration and imposed a fine of $2,500. He now appeals and assigns two errors for our review. For the sake of clarity, we shall address the assigned errors out of their predesignated order.

Defendant's second assignment of error states:

"Eugene Scalf has been denied * * * his liberty without due process of law by his sentence for drug possession, which was supported by evidence that it was, as a matter of law, insufficient to prove his guilt beyond a reasonable doubt."

Herein, defendant asserts that his conviction is not supported by sufficient evidence. He asserts that the state initiated its investigation upon complaints that juveniles were engaged in drug sales and he is the father of juvenile children. He further asserts that the state's theory that he constructively possessed the drugs found in his home is unsupportable.

In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, the Supreme Court stated:

" ' "[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is [legally] insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the court described the role of the appellate court in reviewing a challenge to the sufficiency of the evidence supporting a conviction:

"An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of

the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

■ Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

"Possession" is defined in R.C. 2925.01(K) as follows:

" 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

■ Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787; *State v. Hankerson* (1982), .70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus. Constructive possession will be established where the accused was able to exercise dominion or control over the contraband. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 373–374, 348 N.E.2d 351, 360–361.

With regard to the sufficiency of evidence supporting a conviction for possession of drugs which are found in an apartment with a defendant, the Supreme Court has concluded that the mere fact that the accused was the owner or lessee of premises where the narcotics were found is not sufficient to establish possession where the premises are also occupied by other individuals and the drugs are found in a common area. *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787. Similarly, in *Cincinnati v. McCartney* (1971), 30 Ohio App.2d 45, 48, 59 O.O.2d 34, 35–36, 281 N.E.2d 855, 856, the court stated as follows:

"The defendants were charged with possession of marijuana. Marijuana was not found on the person of either of the defendants herein. It cannot be successfully argued that being seated six feet from growing marijuana plants in an apartment not occupied, rented or used as living quarters would be sufficient evidence to prove that they were in actual or constructive possession of such plants."

■■ Nonetheless, possession may be established where the defendant occupies the premises with others but the drugs are found in the defendant's living area and in plain view throughout the apartment. See *State v. Boyd* (1989), 63 Ohio App.3d 790, 796–797, 580 N.E.2d 443, 446–447. Accord *State v. Thompson*

(June 9, 1994), Cuyahoga App. No. 63369, unreported, 1994 WL 258665. Finally, readily useable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. See *State v. Pruitt* (1984), 18 Ohio App.3d 50, 58, 18 OBR 163, 171–172, 480 N.E.2d 499, 508.

■ Applying the foregoing, we note that the state's evidence demonstrated that on July 2, 1996, the informant approached defendant and defendant ultimately asked the informant whether he needed a "rock," then stated that the informant would have to wait until his son returned home. The following day, defendant watched as his son sold the informant a rock of crack cocaine.

On July 5, 1996, a warrant was executed at the premises by vice and strike force detectives. As is relevant herein, the search revealed five rocks of cocaine, which were found in a metal cabinet in the kitchen, while other drug-related items were found, with defendant's papers, in an upstairs sitting room. From the foregoing, we conclude that a rational jury could have found that although defendant did not exercise actual control over the cocaine, he was nonetheless able to exercise dominion or control over it. Accordingly, we are unable to conclude that defendant's conviction for possession of the cocaine found in the kitchen was supported by insufficient evidence.

The second assignment of error is overruled.

Defendant's first assignment of error states:

"Eugene Scalf has been denied * * * his liberty without due process of law by his sentence for drug possession, which was both in violation of the Ohio statutory sentencing scheme and was imposed as a punishment * * * for exercising his constitutional right to a trial."

Within this assignment of error, defendant complains that the trial court imposed the maximum term of incarceration in order to punish him for exercising his right to a trial. Defendant further complains that the trial court failed to comply with the requirements of R.C. 2929.14(B) in establishing the sentence herein.

■ As to the first of these claims, it is axiomatic that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right[.]" *State v. O'Dell* (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227. Thus, the augmentation of sentence based upon a defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. *United States v. Araujo* (C.A.2, 1976), 539 F.2d 287, certiorari denied *sub. nom. Rivera v. United States* (1976), 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593; *United States v. Hutchings* (C.A.2, 1985), 757 F.2d 11, 14; *United States v.*

*Derrick* (C.A.6, 1975), 519 F.2d 1, 3. This rule applies "no matter how overwhelming the evidence of [defendant's] guilt." *Id.* at 3.

■ Moreover, courts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof. *United States v. Hutchings, supra; United States v. Stockwell* (C.A.9, 1973), 472 F.2d 1186, 1187. The *Stockwell* court stated:

"Here, * * * the defendant contends he was punished with four additional years in prison for taking the court's time with a trial. While we do not believe that the experienced trial judge actually punished the defendant for standing trial, the record leaves unrebutted the inference drawn by the defendant.

"If there was such a use of the sentencing power, the constitutional right to a trial would be impaired. See *Baker v. United States,* 412 F.2d 1069, 1073 (5th Cir.1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); *United States v. Wiley,* 278 F.2d 500 (7th Cir.1960). The chilling effect of such a practice upon standing trial would be as real as the chilling effect upon taking an appeal that arises when a defendant appeals, is reconvicted on remand, and receives a greater punishment. See *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

"We recognize the variety of considerations that can bear upon a sentence. A genuine admission of guilt may properly result in a lighter sentence than would be appropriate for an intransigent and unrepentant malefactor. See, *e.g., Gollaher v. United States,* 419 F.2d at 530. However, courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice."

■ Where such appearance has been created, the appellate court will determine whether the record contains an unequivocal statement as to whether the decision to go to trial was or was not considered in fashioning the sentence. See *United States v. Hutchings, supra.* Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing. *Id.;* *United States v. Medina–Cervantes* (C.A.9, 1982), 690 F.2d 715, 716–717. The *Medina–Cervantes* court stated:

"[The contested] statements clearly give rise to the inference that Medina–Cervantes was punished more severely because of his assertion of the right to trial by jury. Nothing in the record before us serves to dispel this inference. Accordingly, in order to avoid the 'chilling effect' upon the exercise of the right to trial presented by even the appearance of such practice, we conclude that the sentence imposed on Medina-Cervantes must be vacated." *Id.,* 472 F.2d at 1187.

 Further, a trial court may not impose a more severe punishment than it would have otherwise imposed in order to sanction a defendant whose demand for a trial has caused the state to expend resources. For in reversing Medina–Cervantes's conviction, the court observed that the trial court had also stated as follows:

" 'It's obvious to me that this man wanted a trial, with all his constitutional rights, and he insisted upon them and he had them. To the cost to the government for the jury, with 40 jurors, $30 a piece is $1200, figure that transportation was $1500, cost defenders, cost of Schoonover, who nobody would stipulate, the fingerprints on the card, no pictures having been made.' " *Id.*, 690 F.2d at 716.

While this court, in *State v. Paige* (Dec. 22, 1994), Cuyahoga App. No. 66743, unreported, 1994 WL 716530, rejected Paige's claim that he was subjected to a more severe sentence in retaliation for his exercise of his right to trial, we determined in that matter that the sentence was actually issued in consideration of "the facts of the case, the defendant's character, history and background that was before the court[.]" *Id.*

 Applying the foregoing to the facts of this matter we note that the trial court's remarks were as follows:

"THE COURT: * * * You had an opportunity to do the right thing, which is to admit your culpability, and you did not do it. I don't think there's any question that you were involved in drug activities or willingly turned a blind—

"THE DEFENDANT: I wasn't.

"THE COURT:—eye so that your children could sell drugs out of the house. Hey, after all, we had someone call from within your family to turn you in. Things were getting pretty out of control at this house that looked like a pig pen according to the police.

"So, you know, this is a serious offense in terms of what it's done to the community, in terms of what it did to your children who were involved in it, in terms of the resources that it took to convict you. We had the police and the prosecutor sitting down here for three days to convict you and impanel this jury and try it, and for that you're going to be punished. And never once did you admit any degree of culpability whatsoever.

"And, ladies and gentlemen, I want you to know, had he been willing to enter a plea on this case, he would have been afforded probation. He wouldn't have gone to the institution.

"But now you're going to the institution."

As an initial matter, we cannot condone the trial court's statement that "[w]e had the police and the prosecutor sitting down here for three days to convict you and impanel this jury and try it, and for that you're going to be punished." Since a trial court may not punish a defendant more severely for exercising his right to a trial, it follows that the court is likewise prohibited from punishing a defendant more severely for causing the state to expend the resources needed to put on its proof. Cf. *United States v. Medina–Cervantes, supra.* For a trial cannot be held without the expenditure of some resources. Thus, to tolerate the excuse of expended resources to justify the enhancement of a sentence would wholly defeat the constitutional right to trial.

The remaining remarks include "You had an opportunity to do the right thing, which is to admit your culpability, and you did not do it * * * I want you to know, had he been willing to enter a plea on this case, he would have been afforded probation. He wouldn't have gone to the institution. But now you're going to the institution." We find that these remarks create the appearance that defendant was given a more severe sentence in order to punish him for exercising his right to a trial. Further, the record fails to unequivocally demonstrate that defendant's decision to go to trial was not considered in fashioning the sentence. Absent such an unequivocal statement, the sentence must be reversed and the matter remanded for resentencing. *Id.; United States v. Hutchings, supra.* We would urge the trial court to use more temperate language in the future and to remain aware that "a cavalier attitude on the part of the court * * * can seriously erode public confidence." *State v. Wright* (Nov. 2, 1995), Cuyahoga App. No. 68027, unreported, 1995 WL 643733.

In light of our determination of the first argument raised within this assignment of error, we do not reach defendant's additional claim that the trial court erred in imposing the maximum sentence for the offense because it failed to supply a "written sentencing opinion" justifying such sentence.

The first assignment of error is sustained.

Defendant's conviction is affirmed; his sentence is vacated, and the matter is remanded for resentencing.

*Judgment accordingly.*

KARPINSKI and JAMES D. SWEENEY, JJ., concur.