OPINION
Defendant-appellant Brian Davis appeals from his conviction and sentence, following a no-contest plea, for Possession of Cocaine. Davis contends that the trial court erred in imposing sentence, because its decision to impose a greater sentence than the one that had been part of a proposed plea agreement rejected by Davis was a punitive sanction imposed upon Davis for having elected to reject the plea agreement and insist upon a suppression hearing. From our review of the record, we conclude that it does not support this contention. To the contrary, it appears that when Davis pled no contest after the denial of his suppression motion, the trial court intended to impose the same sentence that had been part of the rejected plea agreement. This would have been Davis' attendance at a 90-day in-patient treatment program, followed by six months in jail. However, when the trial court later determined that Booth House, which Davis had told the trial court was a treatment facility, was, in fact, a homeless shelter, the trial court instead sentenced Davis to nine months in jail. Accordingly, we find no merit to Davis's assignment of error, and the judgment of the trial court isAffirmed.
 I
Davis was indicted on one count of Possession of Cocaine. He filed a motion to suppress the evidence. Before the hearing on his suppression motion, a proposed plea agreement was read into the record. The terms of this agreement were that if Davis would plead guilty, the trial court would allow him to enter an in-patient treatment facility, followed by a sentence of six months in jail. Davis rejected this plea agreement, and proceeded with a hearing on his motion to suppress.
Following the suppression hearing, the motion to suppress was denied. Thereafter, Davis pled no contest, and was found guilty. At the plea hearing, Davis advised the trial court that he had arranged for placement at Booth House, which he represented to the trial court to be an in-patient treatment facility. The trial court was not familiar with that facility, and deferred consideration of the request until after it had investigated Booth House.
Two weeks later, Davis appeared before the trial court for sentencing. After Davis waived his right of allocution, the trial court proceeded as follows:
 The Court will indicate that I have reviewed the Pre-Sentence Investigation, and also those factors that I am required to review pursuant to 2929.11, 2929.12 of the Ohio Revised Code.
 At this time, I am going to grant the Defendant Community-Controlled Sanctions with the — with the following conditions.
Mr. Davis, these are important, so listen to me.
 Number One, you have to successfully complete Booth House. It's a ninety-day program, and if I discover that you are not maintaining your sobriety while you're at Booth House, that that is going to be a violation of the community control. All right?
 Now, if Booth House — do we know if that's an in-patient?
 MR. DAVIS: In-patient. That's where I been livin', yes.
 JUDGE TUCKER: In other words, you've been liv — you're there right now? Or you'll be — you'll be livin' there . . .
 MR. DAVIS: As soon as I get released from the Workhouse.
JUDGE TUCKER: All right.
 MR. DAVIS: And when I — the counselor from the Workhouse is gonna transport me.
 JUDGE TUCKER: All right. So the — so, you're gonna have to complete the — the Booth House program, the ninety-day program, successfully. Your sobriety during that period is mandatory. And then Crisis Care recommendations must be followed after that.
 In addition to that, however, upon your com — your completion of Booth House, I am also going to sentence you to six months of local incarceration at the Montgomery County Jail, and you're gonna be transported directly from Booth House to the Montgomery County Jail. But I will give you credit, not for the time at Booth House, but for the time you've been in the Montgomery County Jail. All right? So, you'll get credit for that time in the six months.
A week later, before this sentence was journalized, Davis appeared before the trial court again. At that hearing, the following transpired:
 JUDGE TUCKER: The Court would note that we're back in Court to revisit what was done last week. And we're back in Court to revisit that because I was under the erroneous impression that Booth House was an in-patient treatment program. It is not.
 It is, as I understand it now, no more really than a homeless shelter. And I do not find that to be an appropriate setting. And so I'm — we're back here to revisit the issue of Sentencing.
 I am now ready to impose a revised sentence, but I'm gonna obviously allow you, Mr. Davis to — to say anything that you want to say about that, and also Mr. Wilmes [Davis' attorney].
 MR. DAVIS: Uh . . . the Booth House consists of three separate programs. The first floor is — is — is for the homeless. The second floor is for the foreign veterans, and the third floor is for, uh . . . probation and parole.
 And, uh . . . when I talked to Carla, uh . . . — Carla Campbell, that's the Program Director down there, she informed me that she explained all that to you.
JUDGE TUCKER: Well, she didn't.
 MR. DAVIS: Well, see, that's — that's what she told me.
JUDGE TUCKER: All right.
 MR. DAVIS: She told me that she explained to you that . . .
 JUDGE TUCKER: And maybe she did, and I just don't understand. I'm — I — look, I'm takin' the blame for this. I — I — I thought it was something that I now find out that it wasn't. I take full responsibility.
 But, based upon what I now know about Booth House, it's not a place that I'm satisfied for you to be at.
MR. DAVIS: Okay.
JUDGE TUCKER: All right.
MR. DAVIS: I understand.
JUDGE TUCKER: All right.
 MR. WILMES: Your Honor, I think — if — if I may speak just for . . .
JUDGE TUCKER: Oh, absolutely.
 MR. WILMES: Mr. Davis has indicated to me this morning that he can go to CADIS, is it?
 MR. DAVIS: Yes. I told Rachel. Rachel — she's aware that I have a uh . . . inpatient bed there for the 2nd, at CADIS.
 JUDGE TUCKER: Well, I understand, Mr. Davis, but the Court, at this point, is going to revise the previous sentence, and here's what I'm going to do.
 I am going to sentence you to nine months at the Community Correction Center. I'm going to give you credit for time served. I note that even though this is a fifth degree felony, given your — your extensive record, that as — that it is appropriate to sentence you to prison, not to the maximum term, but it is appropriate to sentence you to prison because the shortest term will not adequately protect the public, and — from future crime, and from future activity.
 So based upon that, I am sending you to nine months at C.R.C. with credit for time served. There will be a two-year license suspension.
 And you have the right to appeal this. To do so, you'd have to file a Notice of Appeal within thirty days.
 MR. WILMES: Your Honor, I suppose for the record, I should move to continue the Sentencing and ask the Court to vacate the sentence it just imposed, so that he could bring forth the evidence that he now says he has of, uh . . . allegedly, uh . . . a bed opening in CADIS, and an availability of that program to him.
 JUDGE TUCKER: I'm — at this point, basically, I've decided that what I've done is the appropriate thing to do, so I'm not going to do that. Mr. Wilmes.
MR. DAVIS: May I ask you a question, Your Honor?
JUDGE TUCKER: Quickly.
 MR. DAVIS: Okay. My lawyer come out here and he informed me that you feel like you — that — that I shammed you. And in all actuality, I feel like I've been shammed, because just — in all actuality, you wanted to send me to penitentiary from jump street. Okay.
 And I wish you woulda' went on ahead and did that. And I'm not tryin' to be rude. And I'm not tryin' to be, uh . . . you know, disrespectful or anything, you know what I'm sayin'? But here it is, I — I've been givin' you four months in a workhouse on this case, I'm locked up four months. You let me out last Wednesday, they ordered me locked up on a Friday.
Nah, I mean, that's — that's crazy.
 JUDGE TUCKER: Well, actually — actually on — I — it was not my intent that you be released on Wednesday. My order was that you not be released, but you were released anyhow.
MR. DAVIS: Yeah, all right.
JUDGE TUCKER: All right.
MR. WILMES: Thank you.
JUDGE TUCKER: Thank you.
Two days after this hearing, a termination entry was filed, wherein Davis was sentenced to incarceration at the Corrections Reception Center for nine months. From his conviction and sentence, Davis appeals.
 II
Davis's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN IMPOSING A GREATER SENTENCE AND REFUSING TO PERMIT APPELLANT TO RECEIVE DRUG TREATMENT BECAUSE APPELLANT REFUSED A PLEA AGREEMENT AND REQUESTED A SUPPRESSION HEARING.
Davis and the State agree that a defendant is guaranteed the right to a trial, and should never be punished for exercising that right. They both cite State v. Scalf (1998), 126 Ohio App.3d 614, 710 N.E.2d 1206, andState v. O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, second paragraph of syllabus.
The State contends, and we agree, that the record in this case does not portray the error claimed. From our review of the record, it is abundantly clear that the trial judge intended, after Davis rejected the proposed plea agreement and elected to go forward with the suppression hearing, which resulted in the denial of his motion to suppress, and after Davis' subsequent plea of no contest, to impose the same sentence that was part of the proposed plea agreement. This would have involved Davis' participation in an in-patient treatment facility, followed by six months in jail. The trial court, in no uncertain terms, indicated its willingness to impose that sentence after Davis had elected to proceed with the suppression hearing, and after denying the suppression motion.
However, the trial court discovered that the supposed in-patient treatment facility, Booth House, was in reality nothing more than a homeless shelter. The trial court correctly noted that this was not an appropriate placement. It was then, and only then, that the trial court decided to impose a nine-month sentence of incarceration, rather than a six-month sentence preceded by treatment in an in-patient facility. We find nothing in the record to suggest that the trial judge's decision to impose a nine-month sentence was a vindictive reaction to Davis' having rejected the proposed plea agreement. Accordingly, Davis' sole assignment of error is overruled.
 III
Davis' sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.