DECISION.
{¶ 1} Bringing forth six assignments of error, defendant-appellant Marvin Murrell appeals the judgment of the trial court convicting him, following a jury trial, of possession of cocaine in violation of R.C.2925.11(A). Because we find none of the assignments to have merit, we affirm the judgment of the trial court.
{¶ 2} The record discloses that on October 13, 2001, Cincinnati police officers were conducting surveillance at a drive-through convenience store located in the Bond Hill neighborhood of Cincinnati in response to complaints of narcotic sales occurring in the parking lot of the store. The undercover police officers observed Murrell drive onto the store's parking lot in a 1987 Lincoln Continental. A young man, one of the targets of the drug-sting operation, approached Murrell, conversed with him and then entered the passenger side of the car. At that time, uniformed police officers in marked police vehicles drove onto the parking lot, blocking Murrell's automobile. The officers removed the individual from the passenger seat and explained to Murrell that the young man was the subject of a police drug-sting operation. The officers, concerned that the suspected drug dealer may have left contraband in Murrell's vehicle, asked Murrell if they could search his car. Murrell consented to this search.
{¶ 3} The search revealed loose cash in the amount of $2,539 in the glove compartment and $8,000 in a paper bag behind the driver's seat. The money in the bag was separated into bundles of $1,000 and secured with a black rubber band. The officers then searched the trunk of the vehicle and found an additional bundle of cash in the amount of $1,000, which was also secured with a black rubber band, and a small red canvas bag with the "Marlboro" logo on it. The Marlboro bag contained 248 grams of powder cocaine. Finally, the officers found, in the trunk and the interior of the automobile, a magazine and other pieces of mail addressed to Murrell and several receipts for items that Murrell had purchased.
{¶ 4} After having been arrested for possession of cocaine and having been read his rights, Murrell told the officers that the Lincoln was not his car and that he had just borrowed the automobile fifteen minutes earlier from a friend, Walter Williams. Murrell also stated that he had been unaware of the money in the glove compartment and in the trunk, but he did claim that the $8000 in the bag was his. He stated that he had recently withdrawn that money from the bank in order to pay workers that he had hired to help him remodel an apartment building that he owned. Murrell stated that he had no knowledge of the cocaine in the Marlboro bag.
{¶ 5} At trial, Williams, the titled owner of the Lincoln, testified that he had loaned the car to Murrell on the afternoon of October 13, 2001, so that Murrell could drive one of his workers, hired to remodel the apartment building, home. He further testified that, earlier that day, an acquaintance, Cornell Allen, had asked him to keep the Marlboro bag until he could come back and retrieve it. According to Williams, he placed the bag in the trunk of the Lincoln for safekeeping, thinking that the bag contained money, and Murrell was unaware of it being there. Dwight Nared, a "shade-tree mechanic" who was working on Williams's other car, testified that he had seen Allen approach Williams and that Williams took a red bag from him and placed it in the trunk of the Lincoln.
{¶ 6} Nathaniel Watkins testified that he had worked with Murrell that day on the apartment building. He stated that Murrell had borrowed the Lincoln from Williams in order to give him a ride home. Watkins testified that Murrell had stopped at the convenience store at his request so that he could buy some food and cigarettes. But an undercover police officer, Cynthia Alexander, testified that when Murrell pulled into the parking lot there was no one in the car with him, and that she did not see any passenger leave the car to enter the store.
{¶ 7} The jury returned a guilty verdict, and the trial court sentenced Murrell to an eight-year prison term. Murrell moved for a new trial and a judgment of acquittal after the verdict on the basis that Cornell Allen was now willing to testify in court that the cocaine in the trunk of the Lincoln was his.
{¶ 8} The transcript of the hearing on the motion for a new trial reveals that Murrell's defense counsel interviewed Allen nine days after Murrell had been arrested. The audiotaped interview revealed that Allen understood that his statement could be used against him and that he was making his statement voluntarily. Allen stated that he had known that the Marlboro bag contained "dope" and that he had asked Williams to hold the bag until he could come back for it. Allen's affidavit, submitted at the hearing, declared that Allen had received the cocaine from Eddie Barber and was to deliver it to a man named Jimmy. At the hearing, Allen also testified that he did not respond to defense counsel's subpoenas to testify at trial because he was afraid of Eddie Barber.
{¶ 9} The trial court noted that Murrell's trial counsel never brought to the court's attention, during trial, that there was an audiotaped interview in which Allen stated that the drugs were his. Further, the court noted that Murrell's counsel never asked for a continuance so that the sheriff could try to locate Allen. Murrell's counsel stated that he had tried to locate Allen, but that it was difficult since Allen moved around to different shelters. The trial court overruled the motion for a new trial because Allen's testimony was not newly discovered evidence and because it did not believe Allen's story.
{¶ 10} In his first assignment of error, Murrell asserts that the trial court erred by denying the motion for a new trial.[1] We are unpersuaded.
{¶ 11} Crim.R. 33(A)(6) permits a defendant who is convicted of a criminal offense to move for a new trial on the ground of newly discovered evidence, if the defendant can show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.[2] It is within the discretion of the trial court whether to grant the motion.[3]
{¶ 12} A review of the record clearly demonstrates that Allen's testimony was not newly discovered since the trial. Indeed, Murrell's trial counsel transcribed his interview with Allen just twelve days after Murrell's arrest. At best, it appears that Allen's whereabouts were newly discovered after the trial. Furthermore, Allen was subpoenaed for trial by Murrell but failed to appear, and the record discloses that no request for a continuance was made to secure Allen's appearance.
{¶ 13} While Murrell's trial counsel took issue with the court's rejection of Allen's "confession" for the reasons that it was cumulative and contradictory, we note that the jury was informed of Allen's alleged activity through the testimony of Walter Williams and Dwight Nared, and that it had obviously declined to lend it any credence.
{¶ 14} For the forgoing reasons, we cannot say that the trial court's denial of the motion for a new trial demonstrated an unreasonable, arbitrary, or unconscionable attitude.[4] The first assignment of error is overruled.
{¶ 15} In his second and third assignments of error, Murrell challenges the sufficiency and weight of the evidence supporting his conviction. In his fourth assignment of error, he asserts that the trial court erred in denying his Crim.R. 29 motions for a judgment of acquittal made after the state's case and again after the verdict had been returned. Because Murrell has argued these assignments together, we address them in like fashion and find them to be without merit.
{¶ 16} When reviewing a challenge to the trial court's denial of a Crim.R. 29 motion, an appellate court is required to determine whether the evidence "[wa]s such that reasonable minds [could have] reach[ed] different conclusions" as to whether the state had proved each material element of the offense beyond a reasonable doubt.[5] In reviewing a sufficiency-of-the-evidence claim, an appellate court must examine the evidence presented at trial and determine whether that evidence, viewed in a light most favorable to the state, could have convinced any rational trier of fact that the defendant was guilty beyond a reasonable doubt.[6]
On the other hand, when reviewing a weight-of-the- evidence question, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[7]
{¶ 17} R.C. 2925.11(A) provides that "[n]o person shall knowingly * * * possess * * * a controlled substance." Murrell argues that the state did not sufficiently prove the elements of knowledge and possession beyond a reasonable doubt.
{¶ 18} Our review of the record convinces us that the state adduced sufficient evidence to support the conviction. R.C. 2901.22(B) provides that "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." With respect to the possession element, R.C. 2925.01(K) provides that "possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession can be actual or constructive. Constructive possession is present when the accused is able to exercise dominion or control over the contraband.[8] Furthermore, "readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession."[9]
{¶ 19} Here, the following state's evidence sufficiently demonstrated that Murrell probably had known that the cocaine was in the trunk of the Lincoln and that he had constructively possessed the cocaine: (1) Murrell so frequently used Williams's automobile, and had the key on his personal key chain, that the vehicle was essentially at Murrell's disposal; (2) mail addressed to Murrell, as well as some personal papers, was found in the trunk of the car; (3) a bundle of cash in the amount of $1000 was found in the trunk along with the cocaine; and (4) the money found in the trunk was secured with a black rubber band in the same fashion as the cash found in the paper bag behind the driver's seat that Murrell admitted to owning. Although this evidence was circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.[10]
{¶ 20} Additionally, we conclude that the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Finally, a review of the record reveals that reasonable minds could have reached different conclusions as to whether each element of the offense was proven beyond a reasonable doubt. Accordingly, the second, third and fourth assignments of error are overruled.
{¶ 21} In his fifth assignment of error, Murrell asserts that the trial court erred by entering a judgment of conviction in light of prosecutorial misconduct during closing argument. Because Murrell's trial counsel did not object to the prosecutor's remarks, we review the alleged misconduct for plain error. Thus, in order to reverse Murrell's conviction for prosecutorial misconduct, we must be persuaded that Murrell would not have been convicted but for the alleged misconduct.[11]
{¶ 22} During closing argument, Murrell first claims, the assistant prosecutor referred to Murrell's witness as liars. Second, Murrell claims that the prosecutor impermissibly vouched for the credibility of the state's case. Finally, Murrell complains that the prosecutor engaged in misconduct when he characterized the cocaine recovered from the trunk of the car as a "whole lot of drugs."
{¶ 23} A prosecutor is afforded some degree of latitude during summation.[12] But while the state may prosecute vigorously and strike hard blows, it may not strike foul ones.[13] Misconduct by a prosecutor in order to secure a conviction is a denial of due process of law as guaranteed by the Due Process Clause and the Fourteenth Amendment to the Constitution of the United States.[14]
{¶ 24} Having reviewed the record, we cannot say that the prosecutor's remarks rose to the level of plain error. The prosecutor's characterization of the cocaine as being "a whole lot of drugs" was supported in the record. Arresting police officer Jeremy Howard testified that the drugs found in the Lincoln were "a lot of contraband" and that it was unusual to find 248 grams of powder cocaine in the possession of one person.
{¶ 25} With respect to Murrell's claim that the prosecutor impermissibly called the defense witnesses "liars," we note that the prosecutor never used the term "liar." But he did say that "[a] great majority of people that took the stand in this case, stuck up their right hand and did not tell you the truth. In saying that, obviously, there are two versions of what happened here. Mine, of course, as I admitted, it's much, much less exciting than the defendant's version, but I submit to you that its true." While it is permissible for a prosecutor to argue that one of the two parties is lying, he may not speculate to the jury which witness actually lied, because the credibility of the witnesses is within the jury's province.[15] But it is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonable supports that characterization.[16]
{¶ 26} Here, it appears that the prosecutor did cross the line of permissible advocacy by personally vouching that the state's version of the events was true.[17] Further, it was misconduct for the prosecutor to give his opinion that defense witness Dwight Nared's testimony was untruthful. While these remarks were improper and constituted misconduct, we cannot say, based on the evidence presented at trial, that but for these remarks the outcome of the trial would have been different.[18] The fifth assignment of error is overruled.
{¶ 27} In his sixth and final assignment of error, Murrell claims that he was denied effective assistance of counsel when his trial counsel failed to object to the prosecutor's closing argument and when trial counsel failed "to sufficiently attempt to produce Cornell Allen at trial." The assignment is without merit.
{¶ 28} In order to prevail on a claim of ineffective assistance of counsel, it must be demonstrated that trial counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's performance.[19] As discussed above, although the remarks during closing argument were improper, the outcome of the trial would not have been different. With respect to producing Allen as a witness, we note that Murrell's trial counsel made reasonable attempts to get Allen to testify at trial by issuing three subpoenas. Allen testified that he ignored the subpoenas. The sixth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., Gorman and Winkler, JJ.
[1] Murrell also challenges the court's denial of his motion for a judgment of acquittal after the verdict, but we address that issue later in this decision.
[2] State v. Petro (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.
[3] State v. Haynes (Jan. 15, 1999), 1st Dist. Nos. C-970809 and C-970821, citing Petro, supra.
[4] State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
[5] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184.
[6] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[7] See State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[8] State v. Wolery (1976), 46 Ohio St.2d 316, 322, 348 N.E.2d 351.
[9] State v. Scalf (1998), 126 Ohio App.3d 614, 620,710 N.E.2d 1206.
[10] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[11] See State v. Slagle (1992), 65 Ohio St.3d 597, 604-605,605 N.E.2d 916.
[12] State v. Liberatore (1982), 69 Ohio St.2d 583, 433 N.E.2d 561.
[13] Berger v. U.S. (1935), 295 U.S. 78, 55 S.Ct. 629.
[14] Estelle v. Williams (1976), 425 U.S. 501, 96 S.Ct. 1691.
[15] State v. McDade (June 26, 1998), 11th Dist. No. 96-L-197.
[16] State v. Stroud, 2nd Dist. No. 18713, 2002-Ohio-940.
[17] Id.
[18] State v. Dowdell (May 3, 2001), 8th Dist. No. 77863.
[19] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.