JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Rayshawn Daniels appeals his convictions entered after a jury trial in the Cuyahoga County Court of Common Pleas for drug trafficking, possession of drugs, and possession of criminal tools. For the following reasons, we affirm.
 {¶ 2} The record presented to us on appeal reveals the following: On January 29, 2002, members of the Cleveland Police Department executed a search warrant at 6702 Champers Avenue, Apt. 3, Cleveland Defendant and four other individuals were in a bedroom when the police entered. The officers found a large amount of crack cocaine on the bed with a scale and baggies.
 {¶ 3} On April 8, 2002, defendant was indicted for two counts of trafficking in drugs (more than 25 grams but less than 100 grams), in violation of R.C. 2925.03, with one schoolyard specification; one count of possession of drugs (more than 25 grams but less than 100 grams), in violation of R.C. 2925.11; and one count of possession of criminal tools, in violation of R.C. 2923.24. Three other defendants were also indicted for their conduct arising out of these events.
 {¶ 4} On December 16, 2002, the trial began: Sgt. Terrance Shoulders of the Cleveland Police Department testified that he was the lead officer of a four-person crew that made the forced entry into the house where defendant was arrested. He stated that there were many people inside the house, including two women and children. He stated that his crew knocked and then entered the bedroom and saw four males in the room. He stated that the defendant and Eric Naylor were on the bed with four bags of crack cocaine on a plate with a scale and baggies between them.
 {¶ 5} Officer Keith Campbell, Det. Jeff Follmer and Det. Michelle Rivera of the Cleveland Police Department testified that they were the other members of the crew that made the forced entry in the house. They testified that they saw the defendant and Eric sitting on the bed with drugs between them. Officer Campbell stated that he targeted Eric and placed him under arrest. Det. Follmer stated that he secured the defendant and placed him under arrest. He stated that he observed the defendant put a plastic bag with a white substance in it on the bed as they entered the room. Det. Rivera testified that she recovered the drugs lying on the bed.
 {¶ 6} Det. Michael Demchak of the Cleveland Police Department testified that he was in charge of taking the inventory after the drug raid. He stated that defendant refused to make a statement to him.
 {¶ 7} Keesha Reed testified next. She stated that she was the leaseholder on the house, which was the subject of the drug raid. She stated that 11 people, including the defendant and Eric Naylor, her boyfriend, were living at the two-bedroom house at that time. She testified that she was in the living room with a group of children when the police entered through the back door. She stated that the police ordered them to get on the floor and then went into the bedroom where the defendant was. She testified that both Eric and the defendant later told her that the drugs were theirs. She also testified that the defendant told her he sold drugs but that she did not know if he sold them from her house. On cross-examination, she admitted that she is being charged with the same counts as the defendant as well as a gun possession charge. Next, Jermaine Luke testified. He stated that he was in the bedroom the night of the drug bust and was indicted for his participation in the events. He testified that he pled guilty to a reduced charge and agreed to give a statement to the police regarding the events of that night and testify against the defendant. He stated that defendant and Eric were packaging the crack cocaine into baggies with the intent to sell it. On cross-examination, Jermaine admitted to having four other cases within the past year and that he is currently facing prison time.
 {¶ 8} Finally, Det. Timothy Grafton of the Cleveland Police Department testified that he obtained the search warrant after conducting surveillance of the house where defendant was living. Det. Grafton testified that on the evening of the drug bust, he used an informant and then radioed Sgt. Shoulders to enter the house with his team. He stated that he entered the house and saw the defendant along with the other men after they were already secured.
 {¶ 9} The defense presented no witnesses.
 {¶ 10} On December 18, 2002, defendant was convicted of one count of trafficking in drugs, one count of possession of drugs, and one count of possession of criminal tools.[1] Defendant appeals the verdict and raises three assignments of error for our review, which will be addressed together where appropriate.
 {¶ 11} "I. Appellant Daniels' convictions were not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, to the Ohio Constitution.
 {¶ 12} "II. The verdict was against the manifest weight of the evidence because there is no substantial evidence upon which a trier of facts could reasonably conclude that the elements of the offenses charged against defendant have been proven beyond a reasonable doubt."
 {¶ 13} In his first and second assignments of error, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his convictions and that his convictions are against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
 {¶ 14} The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 15} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340. Because the jury is in a better position to observe the witnesses' demeanor and weigh their credibility, this Court may not reverse a jury's verdict if it is supported by sufficient competent and credible evidence going to each essential element of the crime charged. State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 16} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462 at 4.
 {¶ 17} Here, defendant was charged with trafficking in drugs, possession of drugs, and possession of criminal tools. The offense of drug trafficking is defined by R.C. 2925.03, which provides in pertinent part that "no person shall knowingly sell or offer to sell a controlled substance." The offense of possession of drugs is defined by R.C. 2925.11, which provides that "no person shall knowingly obtain, possess, or use a controlled substance." The offense of possession of criminal tools is defined by R.C. 2923.24 and provides that "no person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 18} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of drug trafficking, possession of drugs, and possession of criminal tools. Four Cleveland police officers testified that they saw defendant sitting on a bed with four bags of crack cocaine on a plate with a scale and baggies next to him. Det. Follmer testified that he saw defendant holding one of the bags prior to placing it on the bed. Clearly, defendant had constructive possession of the drugs. State v. Scalf (1998), 126 Ohio App.3d 614, 620. In addition, Jermaine Luke testified that defendant was packaging the drugs for sale and Keesha Reed testified that defendant was involved in the sale of drugs. We find there to be substantial, competent, credible evidence upon which the jury could base its decision that defendant knowingly possessed drugs and criminal tools with the intent to sell the drugs. Under DeHass, supra, the jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, defendant's first and second assignments of error are overruled.
 {¶ 19} "III. The prosecuting attorney violated Mr. Daniels' constitutional rights under Article I Section 10 of the Ohio State Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution by falsely insinuating in front of the jury that the defense attorney and the witness's attorney were law partners and had an interest in biasing the testimony."
 {¶ 20} In his third assignment of error, defendant argues that he was unfairly prejudiced when the State made improper statements during the trial. Specifically, defendant points to the following statements made by the prosecutor with regard to the relationship between Jermaine Luke's attorney and the defendant's attorney:
 {¶ 21} "Prosecutor: You must have a hell of a lawyer that opens the jail door right like that, don't you?
 {¶ 22} "Jermaine Luke: Yes, sir.
 {¶ 23} "Prosecutor: You know that [Jermaine's lawyer] is a partner of [defendant's lawyer]?
 {¶ 24} "Defense Counsel: Objection.
 {¶ 25} "The Court: Overruled.
 {¶ 26} "Defense Counsel: Can we approach?
 {¶ 27} "The Court: Yes, sir.
 {¶ 28} "Defense Counsel: I believe that was misconduct — purposeful misconduct on the part of the State, trying to in somehow imply there is something going on. And it's factually incorrect. We're not partners. We are representing two different people. I believe there is an inference attempted to be made by [the prosecutor] that there is something amiss here. Based on that, I'm going to ask for a mistrial. I believe that at the very least, the Court should make a curative instruction; A, we are not partners, and B, you should not have overruled my objection, because is beyond the scope.
 {¶ 29} "Prosecutor: I'll ask the Court to make a curative instruction I was not aware these two gentlemen were not partners.
 {¶ 30} "Defense Counsel: The whole reason you asked the question was to make it seedy we represent the same person, and it impairs my client to have a fair trial based on that statement." (Tr. 308-311).
 {¶ 31} Following this statement, the trial court issued the following statement to the jury:
 {¶ 32} "The Court: Ladies and Gentlemen of the jury, unbeknownst to [the prosecutor], [defense counsel] and [counsel for Jermaine Luke] are not partners, but they do share a building together that house, I believe, four or five lawyers, but there is no partnership involved.
 {¶ 33} Prosecutor: I apologize, your Honor. And I apologize to [defense counsel]." (Tr. 311).
 {¶ 34} In cases regarding prosecutorial misconduct, where the trial court has sustained an objection and provided a curative instruction to the jury, we must presume the jury followed the trial court's instructions. State v. Raglin (1998), 83 Ohio St.3d 253. Accordingly, even if we agreed with the defendant's characterization of the prosecutor's comment and motive for saying it, we would be unable to find reversible error. The trial court's curative instruction was sufficient to relieve any prejudice. Id. In addition, the fact that the prosecutor may have engaged in some improper argument does not warrant reversal unless the remarks prejudicially affected the substantial rights of the accused. State v. Hessler (2000), 90 Ohio St.3d 108, 125. Here, we are unconvinced that the result of defendant's trial would have been different without the aforementioned commentary by the prosecution.
 {¶ 35} Defendant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, A.J., concurs.
Colleen Conway Cooney, J., concurs.
In Judgment only.
[1] Prior to trial, one count of drug trafficking, with the schoolyard specification, was dismissed.