[Cite as *State v. Riter*, 2014-Ohio-1465.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA00117 |
| | : | |
| ZACHARAY ALLEN RITER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2013CR0305



JUDGMENT:                    AFFIRMED




DATE OF JUDGMENT ENTRY:      March 31, 2014




APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

JOHN D. FERRERO, JR.                    EARLE E. WISE, JR.
STARK CO. PROSECUTOR                    122 Central Plaza, North
RENEE M. WATSON                         Canton, OH 44702
110 Central Plaza S., Ste. 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Appellant Zacharay Allen Riter appeals from the judgment entry of conviction and sentence entered in the Stark County Court of Common Pleas on May 15, 2013. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Appellant and Tanya Riter ("Riter") are married and as of February 17, 2013 were living together in an apartment located at 1447 Rachel Street, Canton, Ohio. Appellant has a prior domestic violence conviction in Canton Municipal Court case number 2011-CRB-005126.

{¶3} On February 17, 2013, Riter and appellant spent the day cleaning a new apartment. They came home to the Rachel Street address and Riter made dinner. The couple drank some vodka and appellant started playing video games. When a friend of appellant's came over, Riter went to bed.

{¶4} Rider awoke shortly after midnight due to noise; appellant's friend was leaving. They had finished the bottle of vodka and were highly intoxicated, by Riter's account. Riter came out from the bedroom and yelled at appellant, calling him irresponsible. At trial she testified she was angry because he gave away the dinner she put aside for herself. The couple argued but it was "not physical." Both went to bed and fell asleep.

{¶5} Riter testified she awoke soon after to appellant saying "get off me." She said "what are you talking about, I was asleep," and appellant responded, "oh yeah, you want to yell at me" and "smacked" her in the face, hard. The strike busted Riter's mouth open and it started to bleed. When she started yelling, appellant got up on all fours on

the bed and punched her repeatedly. He grabbed her hair and pulled some out of her head, choked her, stood on the bed and stomped on her, and bit her several times. Riter testified she could not get away and was bleeding from her ears, mouth, and nose.

{¶6} Eventually appellant got up and ran out of the apartment, naked. Riter locked the door, found a cell phone, and called 911. Police responded and took a statement from Riter and photographed her injuries. They also bagged into evidence some hair that had been pulled from her scalp.

{¶7} Riter directed police in the area appellant fled and they observed bare footprints in the snow. A K-9 officer tracked appellant to a neighboring apartment building where he was found crouched in a stairwell, still naked. Police handcuffed him and escorted him back toward his own apartment; as they approached the apartment, appellant took off running into the apartment and tried to slam the door. He was subdued again and taken back into custody but police described his demeanor as extremely belligerent; he was angry and screaming threats and profanity at officers and Riter.

{¶8} Police observed visible injury to Riter which they photographed. Her t-shirt was stretched, she had blood on her lip and she had marks and scratches on her; it was apparent "she had been in a fight." Appellant had no apparent injuries but claimed he was the victim.

{¶9} Riter went to the hospital on her own and received two stitches to the injury to her lip.

{¶10} On February 29, 2013, Riter obtained a temporary protection order in Canton Municipal Court. Her developing injuries were photographed again that day by Canton police.

{¶11} Riter testified appellant continued to contact her despite the T.P.O.; he has called her many times, sent messages to her through friends, and sent family members to her house to give her messages.

{¶12} Appellant was the only defense witness at trial. He claimed Riter stole a gallon bottle of vodka from a drugstore which they both consumed to the point of intoxication. She went to bed when his friend came over. After the friend left, Riter was mad because they had finished the bottle of vodka.

{¶13} Appellant then claimed he got into bed with Riter, naked, and approached her for sex. She said "you're crazy" and he said he would have sex with the neighbor girl instead. Riter then started slapping him in the face, hitting him, and biting him repeatedly. He ran out of the apartment naked, screaming for help, and hid in the apartment two buildings over waiting for police. When police arrived, they didn't want to listen to his story and told him, "This is a felony, bitch. You're going to jail." Appellant further claimed the police continued to struggle with him while he was naked and he feared for his life.

{¶14} Appellant denied hitting, punching, stomping, or biting Riter on the night of the incident; he said he only asked her for sex. He readily admitted to violating the protection order and contacting her many times, on the telephone and through third parties, because they have learned she is pregnant.

{¶15} Appellant acknowledged his criminal history includes felony convictions for burglary and breaking and entering. Appellant testified he received a community control sanction which he violated and was sent to prison for two years on those offenses.

{¶16} In the instant case appellant was charged by indictment with one count of felonious assault, a felony of the first degree, pursuant to R.C. 2903.11(A)(1) [serious physical harm]; one count of domestic violence, a felony of the fourth degree, pursuant to R.C. 2919.25(A); and one count of violation of temporary protection order, a misdemeanor of the first degree, pursuant to R.C. 2919.27(A)(1). Appellant entered pleas of not guilty and waived his right to trial by jury. The case proceeded to bench trial and appellant was found not guilty of felonious assault but guilty of domestic violence and violation of a temporary protection order. He was sentenced to a prison term of 18 months.

{¶17} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶18} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I. THE TRIAL COURT ERRED WHEN IT SENTENCED DEFENDANT TO THE MAXIMUM TERM OF EIGHTEEN MONTHS FOR A VIOLATION OF OHIO REVISED CODE SECTION 2919.25(A)."

{¶20} "II. THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I.

{¶21} In his first assignment of error, appellant argues the record does not support the trial court's imposition of a maximum sentence because the victim's injuries were not found to constitute serious physical harm; he further impliedly argues he was punished with a maximum sentence for exercising his right to trial. We disagree.

{¶22} In *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If the first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. Id.

{¶23} We first note that subsequent to the Ohio Supreme Court's *Foster* decision, "[t]he decision to impose the maximum sentence is simply part of the trial court's overall discretion in issuing a felony sentence and is no longer tied to mandatory fact-finding provisions." *State v. Parsons*, 7th Dist. Belmont No. 12 BE 11, 2013–Ohio - 1281, ¶ 14.

{¶24} The trial court noted appellant's prior felony record at sentencing, including the fact that appellant had once been granted a term of community control but it was revoked.  The term of 18 months in the instant case is within the statutory range for a fourth-degree felony offense pursuant to R.C. 2929.14(A)(4).  We find the sentence is in accordance with law.

{¶25} Further, the sentence does not constitute an abuse of the trial court's discretion. On this point, appellant implies he was punished for trying his case, but we find this argument unsupported by the record. It is axiomatic that a defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement. *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). The imposition of a harsher punishment on a defendant for exercising his rights would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998). Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, "no matter how overwhelming the evidence of [defendant's] guilt." Id.

{¶26} The trial court must avoid the appearance of penalizing a defendant for going to trial. In *State v. Morris*, 159 Ohio App.3d 775, 2005–Ohio–962, 825 N.E.2d 637 (8th Dist.2005), the court observed, "[If] the court makes statements that 'give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury,' we must vacate the sentence * * * unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence."Id. at ¶ 13, quoting *State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003–Ohio–4338, ¶ 71. "'Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing.'" *Morris*, 2005-Ohio-962 at ¶ 13, quoting *Scalf,* supra, 126 Ohio App.3d at 621.

{¶27} Appellant here points to no evidence in the record that might indicate his sentence is retaliation for trying his case. His sentence of 18 months is within the

statutory range and thus in accordance to law. R.C. 2929.14(A)(4). The sentence does not constitute an abuse of discretion by the trial court.

{¶28} Appellant's first assignment of error is overruled.

II.

{¶29} In his second assignment of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Appellant was convicted of one count of domestic violence pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." He was also convicted of one count of violation of temporary protection order pursuant to R.C. 2919.27(A)(1), which states, "No person shall recklessly violate the terms of any of the following: [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code."

{¶33} Appellant's challenges to the manifest weight and sufficiency of the evidence are based upon his assertions that Riter's testimony was unreliable and the police investigation was flawed. We have reviewed the entire record and disagree with these characterizations; moreover, it is well established determining the credibility of witnesses in within the province of the trier of fact. See *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The evidence in this case supports the judgment of the trial court. We also note appellant admitted to violating the temporary protection order repeatedly.

{¶34} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.

## CONCLUSION

{¶35} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J. and

Gwin, P.J.

Farmer, J., concur.