[Cite as *State v. Rowe*, 2023-Ohio-3686.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  10-23-03

     v.

JENNY E. ROWE,                         O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Celina Municipal Court
Trial Court No.  22CRB00538

Judgment Affirmed

Date of Decision:  October 10, 2023


APPEARANCES:

    *Donna M. Post* **for Appellant**

    *George E. Moore* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Jenny E. Rowe ("Rowe"), appeals the April 20, 2023 judgment of conviction and sentence entered against her in the Celina Municipal Court, following a bench trial in which Rowe was found guilty of Possession of Drug Paraphernalia. On appeal, Rowe argues that her conviction was unsupported by sufficient evidence and/or was against the manifest weight of the evidence. For the reasons that follow, we affirm.

*Procedural History*

{¶2} The record reflects that on November 9, 2022, a complaint was filed in the Celina Municipal Court charging Rowe with Possession of Drug Paraphernalia, a fourth-degree misdemeanor in violation of R.C. 2925.14(C)(1).

{¶3} On November 14, 2022, an arraignment was held and Rowe entered a plea of not guilty.

{¶4} On April 20, 2023, a trial to the court was held. Following the presentation of evidence by both the prosecution and the defense, the trial court found Rowe guilty as charged in the complaint. The trial court then imposed a 25-day jail sentence, with 15 days suspended on the condition that Rowe successfully complete a 2-year term of probation supervision. Rowe was also fined $100.00 and ordered to pay court costs.

{¶5} On May 19, 2023, Rowe filed the instant appeal, in which she raises two assignments of error for our review.

**First Assignment of Error**

**There was insufficient evidence to determine all the elements of the offense including that defendant knowingly possessed drug paraphernalia as required for a violation of R.C. 2925.14(C)(1) and (C)(2) and, therefore, the verdict of guilty was against the manifest weight of the evidence.**

**Second Assignment of Error**

**There was insufficient evidence to determine all the elements of the offense including that defendant possessed the drug paraphernalia with the purpose to use, as required for a violation of R.C. 2925.14(C)(1) and, therefore, the verdict of guilty was against the manifest weight of the evidence.**

*Standard of Review*

{¶6} As an initial matter, we note that Rowe's two assignments of error ultimately assert that her conviction was against the manifest weight of the evidence, although "insufficient evidence" is also referenced in both assignments of error. The body of Rowe's brief does not set forth the standard(s) of review applicable to her claims, and it is therefore unclear whether Rowe is attempting to challenge the sufficiency of the evidence, the manifest weight of the evidence, or both. It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

**{¶7}** While the actual argument in Rowe's merit brief under each assignment of error focuses on factors that are generally relevant only to a manifest weight determination (i.e. the testimony given by Rowe at trial and other evidence contradicting the proof of the elements at issue), we would typically be inclined in such a situation to only address the manifest weight of the evidence. However, in the interest of justice, we opt to analyze the sufficiency of the evidence in this case, in addition to reviewing the manifest weight of the evidence.[1]

**{¶8}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was

---

[1] Our optional review of the sufficiency of the evidence may be unnecessary, as several appellate districts have held that, while the concepts are legally different, "'[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Hackett*, 7th Dist. Mahoning No. 17MA 0106, 2019-Ohio-1091, ¶ 63, quoting *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also, State v. Freeman*, 8th Dist. Cuyahoga No. 106374, 2018-Ohio-3587, ¶ 20; *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, ¶ 85; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48; *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Zich*, 6th Dist. Lucas No. L-09-1184, 2011-Ohio-6505, ¶ 122; *State v. Hill*, 11th Dist. Lake No. 2009-L-004, 2010-Ohio-709, ¶ 15; *State v. Thomas,* 9th Dist. Summit Nos. 22990 and 22991, 2006-Ohio-4241, ¶ 6; *State v. Armstead*, 5th Dist. Stark No. 2004CA00311, 2005-Ohio-1718, ¶ 20. However, in interest of thoroughness, each standard will be addressed in this case.

sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶9} By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Summary of Evidence Presented at Trial*

{¶10} Patrolman David Powell of the Celina Police Department was the sole prosecution witness at trial. Powell testified that on November 9, 2022, at approximately 3:20 a.m., he stopped the truck being driven by Rowe for having no tail lights and having improper license plates. With Rowe was a single passenger, a male named "Nick." After writing citations for the violations, Powell handed the paperwork to Rowe, who was still seated in the truck she had been driving. Because the truck was going to be impounded, Rowe and Nick then got out of the truck and began retrieving personal property from the bed of the truck. Patrolman Powell and his sergeant were standing near the back of the truck at that time, when Rowe approached to ask a question of the sergeant.

{¶11} As Rowe stood speaking with the officers, a glass pipe fell out of the left pocket of Rowe's black puffy jacket, dropped to the ground, and broke into two pieces. Patrolman Powell noticed the item falling, heard a loud sound of glass breaking, and looked down and observed that the item was a pipe. Rowe immediately attempted to reach down and pick up the pipe, but Powell stopped her and placed her in handcuffs. Patrolman Powell testified that, based on his training and fifteen years of experience, the type of pipe carried by Rowe, with a glass stem and a bubble, is commonly used to smoke methamphetamine or crack cocaine.

{¶12} After the pipe fell out of Rowe's pocket, the pipe was collected off the ground by the officers at the scene, packaged and placed into the police department's

secure property system, and then was subsequently admitted as a prosecution exhibit at trial. At trial, when identifying the pipe, Patrolman Powell testified that the visible burn marks on the pipe "indicate that there is residue and that this has been used in the past." (Tr., 21).

{¶13} Also introduced in evidence during the prosecution's direct examination of the patrol officer was an audio/video recording of the incident that had been recorded on Powell's body camera.

{¶14} On cross-examination, Patrolman Powell confirmed that he did not observe Rowe smoking meth or using the pipe at issue, and a search of her person revealed no other drug paraphernalia or illegal drugs in her possession. Nick, the passenger with Rowe, was also searched and nothing illegal was found on his person. The truck driven by Rowe was inventoried by the officers and nothing illegal was located in the truck. Patrolman Powell also testified during cross-exam that, upon the pipe falling out of Rowe's pocket, Rowe immediately said the jacket was not hers and that the pipe was not her pipe, assertions that Rowe then repeated multiple times.

{¶15} On redirect-examination, Powell testified that when Rowe's pockets were checked during the search of her person, she demonstrated a familiarity with every other item in her jacket pockets.

{¶16} Rowe then took the stand at trial and testified in her own defense. She testified that she was employed by an automotive business, where the owner does auto body work and vehicle restoration. The owner buys cheap used cars from which to harvest parts for his business, and then recycles and sells other parts of the vehicles, such as catalytic converters. Rowe testified that such vehicle purchases often took place out of town and it was not uncommon to pick up a vehicle in the middle of the night.

{¶17} Rowe testified that on November 9, 2022, she and Nick picked up a used vehicle in West Carrollton from a seller who did not get off work until 11:00 at night. Rowe was driving the "company truck" at the time. Rowe testified that she and Nick dropped off the newly acquired used vehicle at her employer's shop in Celina. Before leaving the shop to drive to the duplex where Rowe lived at the time, because it was freezing cold outside, she grabbed an old jacket from the backseat of the used vehicle they had just purchased. Rowe testified that she did not check the pockets because she was not planning to keep the jacket on for more than the drive home. During that drive home, Rowe was stopped by the police.

{¶18} With regard to the pipe that fell out of her jacket pocket, Rowe testified that she had walked up to the officers and, while doing so, shoved her driver's license and other documents into the jacket pocket, in order to free her hands so she could retrieve some items from the back of the truck. As a result, the pipe fell out

of her pocket and Rowe explained that it was just a natural reaction when she leaned over to pick up the item she had dropped.  Rowe testified that she had no knowledge there was a meth pipe in the jacket she had picked up that night.  Rowe testified that, other than her identification cards, she was not familiar with the other objects in her coat pockets, although she was able to identify the items in a general sense when removed from her pockets during the search.  Finally, Rowe testified that she took a drug test at the jail that evening and passed it, and that neither she nor her passenger Nick had any criminal history involving drugs.

*First Assignment of Error*

{¶19} Rowe was convicted of Possession of Drug Paraphernalia under R.C. 2925.14(C)(1), which provides in relevant part, that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia."

{¶20} On appeal, Rowe does not dispute that the pipe found on her person was drug paraphernalia.  Rather, Rowe's argument in the first assignment of error focuses on the evidence relating to the element of "knowingly" possessing the drug paraphernalia.  Specifically, Rowe claims that the trial court's finding of guilt was not supported by sufficient evidence and/or was against the manifest weight of the evidence on the issue of whether Rowe had the requisite knowledge that the drug pipe was in her pocket.

**{¶21}** "Knowingly" is defined in R.C. 2901.22(B), which provides in pertinent part that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." As one cannot look into the mind of another, the element of knowledge is to be determined from the facts and circumstances in evidence. *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

**{¶22}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Knowing possession of an object can be actual or constructive. *State v. Scalf*, 126 Ohio App.3d 614, 619, 710 N.E.2d 1206 (8th Dist.1998). "When the disputed issue is the culpable mental state, such as knowledge, the trial court must often rely on circumstantial evidence because direct evidence will rarely be available." *State v. Ha,* 9th Dist. Medina No. 07CA0089–M, 2009–Ohio–1134, at ¶ 32, citing *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

**{¶23}** In this case, a thorough review of the record reflects that the trial court received ample evidence establishing that Rowe knowingly possessed the drug

paraphernalia at issue, and that same evidence was not outweighed by evidence to the contrary.

**{¶24}** First and foremost, the drug pipe was found to have been on Rowe's person, in her jacket pocket. It is a reasonable inference for a trier of fact to conclude that a person has knowledge of an item contained in the clothing they are wearing. *See State v. Stewart*, 3d Dist. Marion No. 9-21-36, 2023-Ohio-253, ¶ 18, citing *State v. Williams*, 10th Dist. Franklin No. 09AP-1152, 2010-Ohio-3383, ¶ 12-15; *State v. Brown*, 4th Dist. Gallia No. 04CA3, 2004-Ohio-5887, ¶ 11-13.

**{¶25}** While Rowe testified that the jacket was not hers and that she had no knowledge of the drug pipe in her pocket, the trial court was free to discredit that testimony. Additionally, there was other circumstantial evidence tending to disprove Rowe's claim that the jacket was not hers and that she had no knowledge of the drug pipe. For instance, the video of the traffic stop reflects that the jacket appeared to fit Lowe perfectly, even though Lowe testified that the jacket was "way too small." (Tr., 47). The video also reflects that, upon initially being pulled over and then approached by the patrol officer, Lowe appeared to have unzipped her left jacket pocket and retrieved her driver's license, which she then handed to the officer. Later in the video, Lowe did not appear to be the least bit startled or surprised when the glass pipe fell from her pocket to the ground and loudly broke. On the contrary, Lowe displayed no hesitation before reaching down for the pipe after it fell on the

ground. At that point in the video, when Patrolman Powell immediately stopped Lowe from grabbing the broken pipe off the street, she then said, "I do apologize."

**{¶26}** The video further reflects that Lowe subsequently asked if she could smoke one of the cigarettes in the pack removed from her jacket pocket by Patrolman Powell. Finally, as the officer was pulling items out of Lowe's jacket pocket when searching her person after the pipe fell to the ground, Lowe identified some of the items removed as dental picks and stated that she had put those in the coat pocket.

**{¶27}** Having first examined the evidence adduced by the prosecution in a light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence to substantiate the essential element of knowing possession. All of that evidence was certainly enough to convince the average mind, beyond a reasonable doubt, that Lowe was aware of the drug pipe in her jacket pocket. Further, upon considering and weighing all of the evidence presented at trial, we conclude that the trial court did not lose its way when it found that Lowe knowingly possessed the drug paraphernalia. The trial court clearly did not believe Lowe's testimony that she did not know the pipe was in the jacket, and we defer to the trier of fact's assessment of witness credibility in light of all of the evidence. Reviewing the entire record, weighing the evidence and all reasonable inferences, and

considering the credibility of witnesses, we find Lowe's conviction was not against the manifest weight of the evidence with regard to the element of "knowingly".

**{¶28}** The first assignment of error is overruled.

*Second Assignment of Error*

**{¶29}** In the second assignment of error, Rowe asserts that the evidence at trial was insufficient and/or was against the manifest weight of the evidence as to Rowe's purpose to use the drug paraphernalia she possessed.

**{¶30}** As previously noted, Rowe was convicted of violating R.C. 2925.14(C)(1), which provides in relevant part, that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia." Thus, R.C. 2925.14(C)(1) requires the state to prove that a defendant intended to use the possessed paraphernalia to ingest illegal drugs. *See*, *e.g.*, *State v. Gaefe*, 12th Dist. Clinton No. CA2001-11-043, 2002-Ohio-4995, ¶ 13.

**{¶31}** It is well established that "intent" is an element that "'can never be proved by the direct testimony of a third person and it need not be.'" *State v. Teamer* 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998), quoting *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Rather, proof of intent must typically be gathered from the surrounding facts and circumstances. *Id*.

**{¶32}** The fact that a defendant charged with possession of drug paraphernalia is in possession of a pipe containing drug residue is circumstantial

evidence that supports the fact-finder's reasonable inference that the possession of the pipe was with purpose to use it. *State v. Gaefe*, *supra*, at ¶ 14, citing *State v. Dell*, 12th Dist. Butler Nos. CA99-06-102 and CA99-07-118, 2000 WL 1051844 (2000). *See also State v. Jenkins*, 8th Dist. Cuyahoga Nos. 57220 and 57221, 1990 WL 93201 (1990).

**{¶33}** In the instant case, the trial court found from the evidence presented that Rowe had the requisite purpose to use the drug pipe and, upon review, we cannot say that the trial court's determination in that respect was not supported by sufficient evidence or was against the weight of the evidence.

**{¶34}** The evidence established that the pipe that fell from Rowe's pocket is commonly used as a pipe to smoke methamphetamine or crack cocaine, and our review of the item in evidence reveals no conceivable legal use for the same. Additionally, contrasted with a situation where a person may just have constructive possession of drug paraphernalia, Rowe had the drug pipe in her actual physical possession, in her jacket pocket, where it was immediately accessible. It is not unreasonable to conclude that one would not carry drug paraphernalia on their person, ready at hand, if they lacked an intent to use the paraphernalia. Finally, while no drugs were found on Rowe, her companion, or in the vehicle Rowe was driving, Patrolman Powell testified that the pipe contained burnt residue from prior use.

{¶35} From the surrounding circumstances, including but not limited to Rowe's possession of the drug pipe in her pocket, ready at hand, and the officer's testimony that the pipe contained drug residue, the trial court could reasonably infer Rowe's intent to use the pipe to ingest illegal drugs, particularly as there would be no other logical reason to carry such an item around with her if not for using it to consume illegal drugs.

{¶36} After examining the evidence in the record in a light most favorable to the prosecution, we conclude that the prosecution did produce some evidence for each of the essential elements of the crime of Possession of Drug Paraphernalia in violation of R.C. 2925.14(C)(1), including the element of purpose to use the paraphernalia. Based on the evidence presented at trial, a rational trier of fact could find that Rowe committed the offense as charged.

{¶37} Additionally, upon reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we also find that Lowe's conviction was not against the manifest weight of the evidence with regard to the requisite intent to use the paraphernalia. Put another way, we cannot say that the evidence weighs heavily against Rowe's conviction, or that trial court clearly lost its way, creating a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.

{¶38} The second assignment of error is overruled.

*Conclusion*

**{¶39}** Having found no error prejudicial to the defendant-appellant, Jenny Rowe, in the particulars assigned and argued, the judgment of the Celina Municipal Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/jlr**